[No. 29934. *En Banc.* June 7, 1947.]

ALVINA LESCHNER, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.[1]

[1]Reported in 185 P. (2d) 113.

912

*The Attorney General* and *Lucile Lomen, Assistant,* for appellant.

*Rex S. Roudebush,* for respondent.

STEINERT, J.—An injured claimant made application for compensation from the state accident fund, under the provisions of the workmen's compensation act. After investigation of the claim, the application was denied by the supervisor of the department of labor and industries. On rehearing before the joint board of the department, the decision of the supervisor was sustained. The injured claimant then appealed to the superior court, and, after a

hearing without a jury, the court entered judgment reversing the decision of the department and remanding the cause to that tribunal for the purpose of fixing the amount of compensation properly payable to the claimant. From that judgment the department appealed to this court.

There is no controversy as to the facts in the case. From about 1922 until the day of the accident here involved, respondent, Alvina Leschner, was employed at various intervals and for varying lengths of time as a manual laborer at the plant of Carstens Packing Company, in Tacoma. During that period, she worked in various departments of the plant, as directed by her employer. On February 14, 1941, she was working in the laundry department, operating a heavy piece of machinery designated a washer. For some unknown reason, the machine unexpectedly broke loose from its mooring, and one of its doors or lids struck respondent on the top and right side of her head, felling her to the floor. It is conceded that her employment was classified as extrahazardous, within the meaning of the workmen's compensation act, and that the injuries sustained by her were serious.

At the time of the accident, respondent's employer had a contract with Pierce County Medical Bureau providing for medical attention to be furnished by the bureau to the company's employees in cases of accidents within the scope of the workmen's compensation act. The bureau is composed of a large number of physicians in Tacoma.

On February 15, 1941, the day following the accident, respondent, through her son, obtained from the timekeeper of her employer a slip of paper authorizing Dr. Christian Quevli, or any other doctor connected with the bureau, to give the respondent medical attention for the injuries received by her as a result of the accident. Respondent consulted Dr. Quevli and was advised by him that treatment of her injuries did not come within his professional line. At the same time, he gave her a similar slip of paper, referring her to Dr. E. J. Dodds, another member of the medical bureau.

Respondent then went to Dr. Dodds' office, presented the slip of paper which Dr. Quevli had given her, and submitted to an examination. Dr. Dodds informed her that the muscles of her back were torn loose, although he took no X-ray pictures. He explained to her that his method of treatment consisted of injections of "some shots for the muscles," but that, owing to her condition, it would take a long time to effect complete recovery.

Dr. Dodds treated respondent by this method for about four months, giving her two shots a week for a while and then reducing them to one, but this treatment did not bring about any improvement in her condition. She continually suffered much pain in her back, head, eyes, and ears, and was thereby incapacitated from work. For a while she was unable to walk.

About two months after the accident, respondent was informed by the timekeeper of her employer that she was entitled to compensation for the accident, and that she should have Dr. Dodds "send in a slip" for that purpose. The following testimony of the respondent, before the examiner for the joint board, best indicates the basis upon which the trial court rendered judgment in her favor:

"Q. What did he [Mr. Hult, the timekeeper] say? A. He said I should have the doctor send in a slip. He said you should be getting something—you were hurt on the job, and even the slip was marked hurt on the job. Every slip I received was marked hurt on the job, also. Q. What, if anything, did Mr. Hult say further. A. He just said I should have that sent in. Q. By whom? A. By the doctor. Q. After that conversation with Mr. Hult, what if anything, did you say to the doctor—referring I suppose to Dr. Dodds—on that subject? A. I told Dr. Dodds what Mr. Hult said. Q. What did he say—the doctor? A. He got nervous, and he said he'd sent that in already. He said that just in those words."

Respondent further testified that, a short time after the accident, she met Mr. Tom Carstens, an official of the packing company, in a physician's office, and there conversed with him concerning the matter:

"A. He asked me if—how I was getting along and if everything was taken well care of, and I said, yes, I think so. Q. Did he indicate what he referred to when he asked if everything was taken care of? A. He said—I don't know just exactly what it was, but that is what he said—if I was getting paid for while I was laying off. 'Are you well taken care of?'—that is what he asked me. Q. What did you say? A. I said 'yes, sir, I think so.' And then he said for me to come back as soon as possible. He said, 'anytime you are ready, Mrs. Leschner, your job is there.' Q. Did you, at that time, state anything with reference to your accident claim? A. Well, that is what it was about—the claim—I guess, that is what he meant. He was in a hurry, and the doctor called him in at that moment, because he was having his eyes examined, and he couldn't talk any longer. MR. COBLEY [the examiner]: Did he ask you if you had turned in your claim? THE WITNESS: He said, I think 'Did you report the claim?' MR. COBLEY: What did you say? THE WITNESS: I said Dr. Dodds did."

The unfortunate fact is, as revealed by the record, that Dr. Dodds never sent to the department of labor and industries any report relative to respondent's injuries. It is also a fact that the employer company never made any report of the accident.

At the end of four months, Dr. Dodds informed respondent that he could no longer treat her. It appears that the doctor was himself sick at that time, and that he died before the present litigation arose. After Dr. Dodds quit treating respondent, she went to various other doctors seeking alleviation from her affliction; she also had treatments not within the field of medical science. In these efforts to regain her health and strength, she spent all of her savings, amounting to $587.

In May, 1942, which was about fifteen months after the accident, respondent, though still suffering greatly from her injuries, returned to work at Carstens Packing Company and remained there until May 22, 1944. During that period, however, she was frequently compelled to take layoffs on account of those injuries and, on the last-mentioned date, was for the same reason required to quit work entirely.

Since then she has not worked at all. Prior to the accident, she had always been a steady worker.

Shortly before giving up work entirely, respondent consulted Dr. Frank J. Rigos, who gave her an X-ray examination and reported to Dr. Quevli that

". . . there is an old compression fracture of the 1st lumbar vertebral body with moderate deformity. There are also minimal hyper-trophic changes of the lumbar spine. The remainder of the lumbar spine, sacrum, sacro-iliacs, lumbo-sacral and the contiguous structures are normal."

About a year later, in February, 1945, respondent consulted Dr. Joseph Hansen, a practicing physician in Tacoma, who, after examining her, found that she was suffering from some trouble in the region of the sacro-coccygeal joint, rendering physical movement extremely difficult and painful.

After getting a history of the case, Dr. Hansen concluded that it was a "state case," that is, one coming within the scope of the workmen's compensation act. Accordingly, on February 21, 1945, he prepared, upon a regular form furnished by the department, a report of respondent's accident. On the same day, he and the respondent signed the report as required by the rules and regulations of the department. On March 1st, the employer signed that portion of the report required to be signed by it. The complete report, constituting a claim for compensation, was filed with the department on March 5, 1945. A subsequent report, differing slightly in detail, was filed May 7, 1945.

The claim for compensation was rejected by the supervisor solely upon the ground that it had not been filed within one year after the day on which the injury occurred, as required by our workmen's compensation act.

At the rehearing before the joint board, respondent was present in person and was represented by her attorney. The employer also was represented, urging that the claim be allowed and compensation paid. It further appears from the record that the representatives of the department themselves considered the claim to be meritorious and would have allowed it except for the fact that it had not been filed within the one-year period.

On October 1, 1945, the joint board ordered that the decision of the supervisor be sustained, disallowing the claim, whereupon the injured claimant appealed to the superior court.

As appears by its memorandum opinion filed in the cause, the trial court found that respondent had promptly reported the accident to her *employer,* as required by Rem. Rev. Stat., § 7689 [P.P.C. § 703-1]; that the timekeeper of the employer had advised her to have Dr. Dodds make out her claim for benefits under the statute; that she conveyed that information to Dr. Dodds, and that he told her that he had already sent in the report; that respondent relied on the doctor's statement and did nothing further with reference to her claim until she was treated by Dr. Hansen in February, 1945, subsequent to which treatment a claim was for the first time filed with the department, more than four years after the accident. Upon these findings, the trial court held that "the claimant did all she could do or was required to do"; that

". . . in view of the oft expressed purpose of the act [workmen's compensation act], as a humanitarian effort to assist the injured workman and the express demand for a liberal construction, the Court is convinced that the attending physician [Dr. Dodds] is a representative of the state, clothed with a duty and responsibility";

and that if the physician fails to perform his duty, without fault of the claimant, and the benefits of the act are by reason of such failure lost to the claimant,

". . . that fact should not deprive a claimant of her just rights under the law and that the state should be estopped to claim the benefit of the physician's error."

Consequently, the court entered judgment reversing the decision of the joint board, remanding the claim to the department for the purpose of having compensation fixed, and allowing respondent her costs. The department thereupon appealed to this court.

The issues presented by the appeal are (1) whether a physician, called to treat a workman for injuries compensable under the workmen's compensation act, is an agent of

the state department so far as filing, or failing to file, a claim for compensation to the workman is concerned; and (2) even if that proposition be answered in the affirmative, whether, in any event, the department may be estopped to assert, as against the respondent, Alvina Leschner, the one-year limit for filing her claim. We shall treat these issues in the order specified.

The statute bearing upon the subject is Rem. Rev. Stat., § 7686 [P.P.C. § 706-1], (a), (d), and (e), which provide:

"(a) Where a workman is entitled to compensation under this act he shall file with the department, his application for such, together with the certificate of the physician who attended him, and it shall be the duty of the physician to inform the injured workman of his rights under this act and to lend all necessary assistance in making this application for compensation and such proof of other matters as required by the rules of the department without charge to the workman." (Laws of 1911, chapter 74, p. 364, § 12 (a).)

"(d) No application shall be valid or claim thereunder enforceable unless filed within one year after the day upon which the injury occurred or the rights of dependants or beneficiaries accrued." (Laws of 1911, chapter 74, p. 365, § 12(d), as amended by Laws of 1927, chapter 310, p. 847, § 6(d).)

"(e) Any physician who fails, neglects or refuses to file a report with the director of labor and industries as required by this act within ten days of the date of treatment, showing the condition of the injured workman at the time of treatment, a description of the treatment given, and an estimate of the probable duration of the injury, or who fails or refuses to render all necessary assistance to the injured workman as required in this act, shall be guilty of a misdemeanor." (Laws of 1921, chapter 182, p. 728, § 7(e), as amended by Laws of 1927, chapter 310, p. 847, § 6(e).)

As appears above, these various subdivisions were enacted in their present form at various sessions of the legislature.

It will be observed that the statute as it presently exists requires (1) that the *workman file with the department* his application for compensation, together with the attending physician's certificate, and that the *physician inform the workman* of his rights under the act, and *lend him all necessary assistance* in making the application; (2) that *no appli-*

cation shall be valid or claim thereunder enforcible unless filed within one year after the date of the injury, etc.; and (3) that any physician who fails or refuses to file, within ten days, a report showing the workman's condition and the treatment given therefor, or who fails or refuses to render all necessary assistance to the injured workman as required by the act, shall be guilty of a misdemeanor.

Another section of the statute, Rem. Rev. Stat., § 7689, provides:

"Whenever any accident occurs to any workman it shall be the duty of such workman or someone in his behalf to forthwith report such accident to his employer, superintendent or foreman in charge of the work, and of the employer to at once report such accident and the injury resulting therefrom to the department, and also to any local representative of the department."

It is undisputed that respondent reported the accident to her employer as required by Rem. Rev. Stat., § 7689; but it is also undisputed that she failed to file with the department a claim or application for compensation within the time allowed by statute, and that in fact her claim was not filed until a period of more than three years after such time had elapsed. As stated by the trial court in its memorandum opinion, unless the failure of Dr. Dodds to prepare and file a claim in some manner works an estoppel against the state to set up the one-year limitation, the statute bars the claim.

Our immediate inquiry, then, is whether the workmen's compensation act evinces an intention that the physician who treats the injured workman shall be deemed an *agent* of the industrial insurance department, for any purpose related to the filing of claims for compensation.

Agency is ordinarily thought of as a consensual relation, wherein the agent agrees to act on behalf, and subject to the control, of his principal. *Walter v. Everett School Dist. No. 24*, 195 Wash. 45, 79 P. (2d) 689; Restatement, Agency, § 1. However, with respect to third persons, an agency may arise by implication of law, as when acts of the principal induce others to believe that such a relation exists. 2 Am. Jur. 24, Agency, § 21. The essential feature of the

relationship is the representative capacity of the agent and his power to alter the legal relations between his principal and third persons. *Steele v. Lawyer*, 47 Wash. 266, 91 Pac. 958; Restatement, Agency, § 12.

■ There is no contention in this case that Dr. Dodds was, by mutual consent, the agent of the department of labor and industries in dealing with the respondent Leschner; nor is there any room for argument that any act either of Dr. Dodds or of any representative of the department induced respondent to believe that any such relation existed. Whatever representative authority Dr. Dodds had must necessarily be inferred from the language used in our industrial insurance law. Such authority could not have been validly exercised by him except in pursuance of the statute, for the department is an administrative agency and cannot dispense with the essential forms of procedure which condition its wholly statutory powers. *State ex rel. Public Utility Dist. No. 1 v. Department of Public Service*, 21 Wn. (2d) 201, 150 P. (2d) 709, and cases therein cited; see 42 Am. Jur. 379, Public Administrative Law, § 68.

It is therefore pertinent to examine the portions of the workmen's compensation act relating to control by the department over physicians, and the authority of physicians thereunder.

From the inception of the act in 1911, attending physicians have been under duty to inform injured workmen of their rights under the workmen's compensation law, and to lend all necessary assistance in making applications for compensation and providing such proofs of other matters as have been required by rules of the administrative agency, without charge to the claimant workmen. Laws of 1911, chapter 74, p. 364, § 12(a) (Rem. Rev. Stat., § 7686(a), quoted *supra*). However, the only provision in the original act giving the department any control over medical practitioners was § 24(4) (Rem. Rev. Stat., § 7703 [P.P.C. § 710-9] (4)), which empowered the commission, or department, to supervise medical, surgical, and hospital treatment, with the view that it should in all cases be suitable and wholesome.

Amendments to the act have increased the public responsibilities of persons in the medical profession undertaking the care of injured workmen. In particular, physicians are subject to departmental regulations pertaining to medical aid and are limited to maximum fees established for physicians, surgeons, hospitals, druggists, and other persons rendering services to persons within the purview of the act. Laws of 1917, chapter 28, p. 87, § 6 (Rem. Rev. Stat., § 7715 [P.P.C. § 696-7]). In proceedings before the department or the superior court, physicians may be required to testify fully and without exemption regarding their examination and treatment of claimants. Laws of 1915, chapter 188, p. 688, § 4 (Rem. Rev. Stat., § 7687 [P.P.C. § 704-5]). By statute passed in 1921, it is made a misdemeanor for any physician to fail, refuse, or neglect to file with the department within ten days after date of treatment a report showing the condition of the injured workman, a description of the treatment, and an estimate of the probable duration of the injury, or to fail or refuse to render all necessary assistance to the injured workman as required by the act. Laws of 1921, chapter 182, p. 728, § 7(e) (Rem. Rev. Stat., § 7686(e), quoted *supra*).

On the other hand, persons subject to the act select their own physicians. It is now provided that the injured workman shall receive, in addition to compensation,

". . . proper and necessary medical and surgical services, at the hands of a physician of his own choice if conveniently located and proper and necessary hospital care and services during the period of his disability . . ."

to be paid for from the medical aid fund. Laws of 1917, chapter 28, p. 86, § 5 (now Rem. Supp. 1943, § 7714 [P.P.C. § 696-5]).

As apparently was done in the instant case, employers may, with the consent of a majority of their affected employees, enter into contracts with physicians, surgeons, and hospitals of their own selection for medical care to injured workmen, provided that such contemplated care meets the standards otherwise required. Laws of 1917, chapter 28, p. 93, § 15 (now Rem. Rev. Stat. (Sup.), § 7724 [P.P.C. § 696-

21]). See critical commentary, Dodd, Administration of Workmen's Compensation, 423-435.

From these provisions of the act, it is plain that the legislature has given to the department of labor and industries a measure of power to regulate doctors, hospitals, and even druggists, who give aid to workmen entitled to benefits under our industrial insurance law. It is equally plain, however, that these provisions give medical practitioners no authority to act on behalf of the department. From this, it follows that a physician has no statutory power, express or implied, to alter any legal relation between a claimant and the state department of labor and industries.

If the attending physician selected by the injured workman were to be deemed an agent of the department, we would be presented with the anomalous situation wherein one whose claim is *against* the industrial insurance fund appoints an involuntary agent *for* the state, with whom the department has no communication, over whom it has no direct control, and yet whose actions bind it with respect to claims upon that fund. In our opinion, the act intends, rather, that the injured workman become the patient of the physician and that certain regulations are imposed upon the physician for the public good, being enforced by the threat of criminal prosecution.

Consequently, we hold that Dr. Dodds was not the agent of, and was not representing, the department of labor and industries when he told the respondent that he had already sent in the claim.

We next consider the second question presented upon the appeal, namely, whether, in any event, the department may be estopped to assert, as against the respondent, the one-year limit for filing her claim.

It is a feature common to most, if not all, workmen's compensation laws, that the beneficiary thereunder, or his representative, must give reasonably prompt notice of the accident resulting in the injury or death, and that he must make his claim for compensation within a specified period, as a condition to his right to payments under the act. The

pertinent sections of our industrial insurance law have been heretofore set out in full.

With respect to the requirement that the workman's claim for compensation be filed within a specified period as a condition to his right to payments, our statute is inflexible, unlike the original English statute and some American compensation acts. For example, the English statute requires a claim to be made within six months after the occurrence of the accident causing the injury:

"Provided always that— . . . (b) the failure to make a claim within the period above specified shall not be a bar to the maintenance of such proceedings if it is found that the failure was occasioned by mistake, absence from the United Kingdom, or other reasonable cause." 6 Edw. VII, chapter 58, § 2 (1).

In Massachusetts, where there is employer's liability insurance, in contrast with state administration of an accident fund, failure to make a claim within the prescribed six months' period does not preclude recovery *if* the delay was occasioned by "mistake or other reasonable cause, or if it is found that the insurer was not prejudiced by the delay." 4 Annotated Laws of Massachusetts 992, chapter 152, § 49.

In Maryland, which maintains a competitive state fund, the workman is required to file his application for compensation within sixty days after the beginning of his disability, unless the failure to do so is by the commission excused for "some sufficient reason"; and his claim is altogether barred after one year

". . . unless it shall be established that failure to file such claim was induced or occasioned by fraud, or by facts and circumstances amounting to an estoppel, in which case the claim shall be filed within one year from the time of the discovery of the fraud, or within one year from the time when the facts and circumstances amounting to an estoppel cease to operate, and not afterwards." 2 Annotated Code of Maryland (1939) 3687, Art. 101, § 51.

We mention these differences merely to emphasize the fact that the wording of Rem. Rev. Stat., § 7686 (d), is deliberately absolute in terms. The department has no power to make exceptions to the rule that claims must be

filed within one year from the date of the accident. See *Read v. Department of Labor & Industries,* 163 Wash. 251, 1 P. (2d) 234; *Ferguson v. Department of Labor & Industries,* 168 Wash. 677, 13 P. (2d) 39.

The trial court took the position, which the respondent now urges us to accept, that the courts may make exceptions to the act in cases of "estoppel," although there is no precedent in this state for such action. In this connection, respondent stresses the humanitarian purpose of our workmen's compensation act and the liberal decisions of this court in interpretation thereof.

■ Provisions of the act respecting the time for making claims, and for appealing from determinations of the department, have in numerous instances been given lenient construction by this court. A claim filed within the year need not be technically correct, but is sufficient if it fairly gives the department such information as the law requires or, as otherwise stated, if the writing which is filed with the department reasonably directs its attention to the fact that a particular injury has been sustained, and that compensation is claimed. *Beels v. Department of Labor & Industries,* 178 Wash. 301, 34 P. (2d) 917; *Nelson v. Department of Labor & Industries,* 9 Wn. (2d) 621, 115 P. (2d) 1014.

■ We have held that if a claim is made within the year, and after that time an additional claim is filed for an unrelated injury received in the same accident, but the disabling effect of which was unknown to the claimant within the year, the one-year limitation is not applicable. *Crabb v. Department of Labor & Industries,* 186 Wash. 505, 58 P. (2d) 1025, 105 A. L. R. 964; *Nelson v. Department of Labor & Industries, supra.*

■ Inasmuch as the statute is not express with reference to disabilities from occupational disease, this court has also held that claims for such disabilities are not governed by the section fixing the one-year limit. *Henson v. Department of Labor & Industries,* 15 Wn. (2d) 384, 130 P. (2d) 885.

The period within which claims for aggravation can be made has been construed in favor of the claimant. *Hunter*

*v. Department of Labor & Industries,* 190 Wash. 380, 68 P. (2d) 224.

In *Ames v. Department of Labor & Industries,* 176 Wash. 509, 30 P. (2d) 239, 91 A. L. R. 1392, on which the respondent relies most heavily, the claim of an injured workman was rejected at a time when he was known to the department to be violently insane; and subsequently a petition for rehearing, filed shortly after he had been adjudged to have recovered his sanity, was denied on the ground that it had not been filed within sixty days after the rejection of his claim, as required by Rem. Rev. Stat., § 7697 (now Rem. Supp. 1943, § 7697 [P.P.C. § 704-1]). This court held that the statute was not intended to permit the department to deal *ex parte* with such claims and thereby deny a workman his just rights unheard while he was known to be *non compos mentis.* The decision was rested on broad equitable principles, upon the theory that the legislature has always been well advised of the uses and purposes of equity to afford relief, under special circumstances, from the harshness of strict legal rules, and that the legislature never intended to deny equitable rights arising under the industrial insurance act.

It should be noted here that the *Ames* case differs from the one at bar in two very important particulars: (1) in that case, a report of the accidental injuries was in fact made by the injured workman within the same month as its occurrence, and an investigation thereof was promptly conducted by the department, while in the case at bar more than four years elapsed before any claim was filed with the department; (2) in that case, it was undisputed that the claimant was insane at the time his claim was denied by the department and for ten months thereafter, and that, upon restoration of his sanity, he employed an attorney who at once filed a petition for a rehearing of the claim, which had been summarily disposed of by the department in the meantime, whereas in the case at bar, the claimant was not only at all times in possession of her mental faculties but was actually put upon notice by the timekeeper that she was required to send in her claim to the department.

■ It is now urged by the respondent that we extend the principle of the *Ames* case to permit the department to consider meritorious claims filed more than one year after the accident, whenever for equitable reasons the department should be estopped to assert subd. (d) of Rem. Rev. Stat., § 7686. This we must decline to do, for, in our opinion, it would be a dangerous path to follow. Such a rule could only be in disregard of the universal maxim that ignorance of the law excuses no one. What is more important, it would substitute for a positive rule established by the legislature a variable rule of decision based upon individual ideas of justice conceived by administrative officers as well as by the courts.

The view we take of the question is in accord with the general rule accepted in the United States without dissent, so far as we are aware, that the terms of workmen's compensation acts respecting the time for filing claims against state funds are binding upon commissions and courts. See annotation, 78 A. L. R. 1306, at 1315; *State ex rel. Caton v. Industrial Ins. Comm.,* 76 Ohio App. 249, 61 N. E. (2d) 806; *Rosell v. State Industrial Accident Comm.,* 164 Ore. 173, 95 P. (2d) 726; *Young v. State Compensation Commissioner,* 121 W. Va. 126, 3 S. E. (2d) 517. In each of the cited cases, a real hardship was imposed by literal adherence to the statutory period, but in each it was nevertheless held that the statute was controlling. In the *Young* case, *supra,* where the argument of the claimant was much like that offered by the respondent herein, the supreme court of appeals of West Virginia explained its attitude in these words:

"Furthermore, the contention that equitable principles should be followed fails to take into consideration the rule that 'equity follows the law', and while there should be a liberal construction and application of compensation statutes, the liberal construction rule has not yet been extended to permit the consideration of a claim which the statute, in effect, says shall not be considered."

In our opinion, these cases represent the weight of authority on the subject under consideration, and induce us

to hold that our statute fixing a time limit for filing a claim with the department is controlling.

We deem it appropriate to say that, although the matter was not raised by the assignments of error, and while we do not make it a ground for decision, the evident laches of respondent in perfecting and prosecuting her claim for compensation is an additional reason why she is not entitled to equitable relief in the courts. Respondent was injured in February, 1941. According to her own testimony, Dr. Dodds told her within two months thereafter that "he'd sent that [slip] in already." She made no other or further effort to secure compensation until February, 1945, four years after the accident, and three years and ten months after her conversation with the doctor. During all that period of time, she received no communication from the department, received not a penny of compensation from the state, and, despite these facts, took no steps to ascertain why the department had not acted upon the report which her physician purportedly sent in.

In these circumstances, it was erroneous to conclude, as the trial court did, that

". . . claimant did all she could do or was required to do and relied upon the physician's statement that the claim was properly attended to, and further did, through another physician as soon as she found the real result of the accident, file in all promptness a proper claim."

Such a finding ignores the fact that the duty to file her claim rested with the respondent, not with her physician, or with the department; and further ignores the inescapable fact that she knew, almost from the time of the accident, of the disabling effect of her injury, and of her right to workmen's compensation.

The principle applicable to the situation is tersely expressed in an ancient maxim: Equity aids the vigilant, not those who slumber on their rights.

"The principle embodied in this maxim . . . operates throughout the entire remedial portion of equity jurisprudence, . . . as furnishing a most important rule controlling and restraining the courts in the administration

of all kinds of reliefs  .  .  .  The principle thus used as a practical rule controlling and restricting the award of reliefs is designed to promote diligence on the part of suitors, to discourage laches by making it a bar to relief, and to prevent the enforcement of stale demands of all kinds, wholly independent of any statutory periods of limitation." 2 Pomeroy's Equity Jurisprudence (5th ed.) 169, § 418.

Even were it assumed that this court might grant equitable relief from the terms of subd. (d) of Rem. Rev. Stat., § 7686, requiring that claims be filed within one year, nevertheless, because of her laches, respondent would have no standing in court to seek our interposition.

For the several reasons hereinabove stated as controlling, we hold that the superior court erred in reversing the order of the joint board denying the respondent compensation.

The judgment of the court is reversed, with direction to enter in its stead a judgment affirming the decision of the department disallowing respondent's claim.

MALLERY, C. J., ROBINSON, JEFFERS, and HILL, JJ., concur.

SIMPSON, J. (dissenting)—My views concerning the issues in this case are well expressed in the trial judge's memorandum opinion, which reads in part:

"It is clear that unless, on the theory that the extent of the injury was not discovered until 1944, or that the failure of Dr. Dodds to prepare and file this claim—as he said he had already done, works as an estoppel against the state to set up the one year limitation, the statute would bar the claim.

"Section 7689, Rem. Rev. Statutes sets forth what should be done when an accident occurs. Claimant fully complied with that requirement. The employer failed to comply in any respect. She was sent to a doctor by the employer and he failed to discover her neck and back injury and failed to inform her of her rights under the act and when she asked about it he informed her he had filed the necessary papers and she, relying on both the employer and the doctor, naturally knew of no reason to file an independent claim. Whatever may have been the intention of the doctor his statement and conduct was calculated to leave in the mind of claimant the impression that all had been done that was required to be done.

"By the undisputed facts Dr. Dodds, whose duty it was, 1st, 'To inform the injured workman of his right' and, 2nd, 'To lend all necessary assistance in making this application,' (Section 7686-(a) Rem. Rev. Stat.) not only failed to do either but actually misled claimant into believing these things had been done when he told her it had all been attended to. (Tr. p. 53) Failure of the physician to file a report is made a misdemeanor. (Rem. Rev. Stat. 7686-(e).

"In *Ferguson v. Dept.*, 168 Wash. 677, the case of *Stolp v. Department*, 138 Wash. 685, was held inapplicable in view of the 1927 amendment. In *Fee v. Department*, 151 Wash. 337, the Court relied on the Stolp case but the matter was held to be an 'aggravation of injury' and the three-year rule was applied.

"In *Crabb v. Department*, 186 Wash. 505, a claim was timely filed for an injury to an ankle. Claimant was struck on the neck and head when that accident occurred but no mention was made of the latter in the original claim filed. Two years after the accident claimant petitioned the department to *reopen* his claim and consider the injuries to his head and neck. The department refused to reopen on the ground the claim for head and neck injuries was not filed within the year. The court points out that the extent of the head and neck injuries were unknown to claimant and physician at the time of filing the original claim and the court then held, following *Skelly Oil Company v. Standley*, 148 Oklahoma 77, that the one year statute did not bar the claim. However, it should be noted that there was a valid claim arising out of the same accident actually filed.

"In *Sandahl v. Department*, 170 Wash. 380, heard in 1932, the Court considered the statute of 1927, comparing it to the previous statute and specifically held 'The legislature intended that the claim should be filed within one year after the date of the injury,' and this time began to run at the time the injury happened.

"*Nelson v. Department*, 9 Wash. (2nd) 621, was a case where claimant was injured in May, 1933, by a broken ankle. The claim was closed October 24, 1933. On October 2, 1934, he filed another claim for infection to the other leg. In February, 1935, he filed a petition for rehearing on the order closing the 1933 and 1934 claims and for the first time claimed back injury in the May, 1933, accident. The Court discussed the Crabb case and Judge Simpson interpreted that case as follows:

" 'When the disabling effect of any injury was not known within one year from the date of the accident and was thereafter discovered, the claim for compensation was not barred by the statute of limitations.'

"The court following the Crabb case held the statute of limitation was not a bar.

"This case differs from the Crabb and Nelson cases in this important particular: in both those cases the accident was timely reported and some claim timely filed; while here no claim was filed until long after the one year period had run.

"A somewhat similar situation to those in this case was held to work an estoppel in *Mulhall v. Nashua Mfg. Co.,* 115 Atl. 449, a New Hampshire case, where there was a six months limitation one the filing of claims and the claim was filed beyond that time.

"In *Kettering v. Fox* 234 Pac. 464 (Colo.), the employee was struck by a train; within the six months limitation the employer and insurance company notified the commission they would contest the claim. The commission held a hearing at the request of the insurer at which the claimant appeared without an attorney and stated he did not know whether he would sue the railroad company until he consulted his attorney. The hearing was ordered continued for claimant to file his election of remedies. At the time the claimant notified the commission the statutory six months limitation had run. This was held an estoppel arose.

"In *Guy v. Stoecklein Baking Co.,* 1 At. (2d) 839, the court quotes another Pennsylvania case with approval as follows:

" 'Where a person is unintentionally deceived as to his rights by one who has authority in the premises to act, courts will not, if possible to prevent it, permit such deception to work an injury to the innocent party.'
and held a promise to file proper proceedings not fulfilled and permitting the time limit to be passed, should and did work an estoppel.

"The essential elements of equitable estoppel are well set forth in *Lindblom v. Emp. Liability Corp.* 295 Pac. 1007. That equitable estoppel is a complete defense is held in *American Mutual Liability Co. v. Hamilton,* 135 S. E. 21.

"It is true that these cases arose in states where the employer is covered by insurance companies and the state board or commission is the appeal and supervising agency but all have statutory limitation within which claims may be filed. It is also true that in each of these cases the act

relied upon as creating an estoppel by the claimant was done by either an agent of the insurer or the employer. In this state the matter is handled exclusively by the state itself but the act supplies the only connecting links between the state and the injured workman. His only means of contact is that provided by the statute itself in Section 7686-(a). This section and section 7689 provide the only machinery by which the injured workman can contact the department.

"If it be said he should himself file with the Department his claim then it must be noted that such a claim *must* be accompanied by the certificate of the physician who treated him; without the certificate of the physician who treated him his claim would be defective on its face and of no avail. He is compelled by the statute to resort to a physician to file a claim in any event. The State by the act itself has provided but a single agency of contact for a claimant, to-wit: the attending physician and provided penalties for his derelictions or neglect. In the cases above referred to the agency of contact selected by the state was either the insurance company or the employer, and the great weight of authority is that by their acts they may create an estoppel against the bar of the statute of limitation in all of these states.

"The Court is unable to note any valid distinction between them and our state monopoly—they chose one intermediary, while our state chose the licensed physicians of this state as theirs, and when the state's chosen intermediary fails in his solemn duty the Court can see no reason why the claimant should be deprived of her rights because of his neglect.

"In this case neither the attending physician or the company (Sec. 7689) performed the duty imposed by statute. On the other hand claimant did all she could do or was required to do and relied upon the physician's statement that the claim was properly attended to, and further did, through another physician as soon as she found the real result of the accident, file in all promptness a proper claim.

"In view of the oft expressed purpose of the act, as a humanitar*ium* effort to assist the injured workman and the express demand for a liberal construction, the Court is convinced that the attending physician is a representative of the state, clothed with a duty and responsibility, and if he fails, without fault of the claimant, and the benefits of the act are lost by reason thereof, that fact should not deprive a claimant of her just rights under the law and that the state

should be estopped to claim the benefit of the physician's error."

The judgment should be affirmed.

ABEL, MILLARD, and SCHWELLENBACH, JJ., concur with SIMPSON, J.

[*En Banc.* October 16, 1947.]

ORDER ON MOTION TO DISMISS APPEAL AND
WITHDRAW EN BANC OPINION

A petition for a rehearing *En Banc* was granted in this case, and while the matter was thus pending, the parties stipulated to dismiss the appeal and joined in moving the court to withdraw its *En Banc* opinion herein filed June 7, 1947.

The motion to dismiss the appeal is granted; the motion to withdraw the *En Banc* opinion herein is denied. This ruling is based on *In re Brown,* 6 Wn. (2d) 215, 101 P. (2d) 1003, 107 P. (2d) 1104.

Since nothing remains in this court upon which a judgment can operate, the *En Banc* opinion hereinbefore referred to is not authoritative. This present order will be published in the bound volume of our reports immediately following the *En Banc* opinion previously rendered.

No costs will be recovered in this court by either party.

Dated this 16th day of October, 1947.

By the Court:

·JOSEPH A. MALLERY
*Chief Justice*

MILLARD, J. (dissenting)—I dissent. The *Brown* case is not in point. The petition for rehearing was pending at the time the motion to dismiss was granted. Both motions in the case at bar should be granted. As we granted petition for rehearing, the cause is before us the same as an original hearing in which no opinion has been filed.

SIMPSON, J. (dissenting)—The *Brown* case is not in point because of the different factual situation. The supervisor rejected the claim of appellant, as did the joint board on

rehearing. The cause was appealed to the superior court, where the department's decision was reversed. The department then appealed to this court. This court, after two hearings, in an *En Banc* opinion reversed the superior court. Now the department moves to dismiss the appeal. The result will be that the judgment of the superior court must be enforced, and the claim paid. The effect will be that the rule laid down in the superior court becomes the law in this state, in so far as the actions of the department are concerned. Why should the department be allowed to pay a claim which the supreme court of this state has held to be improper?

ROBINSON, J., concurs with SIMPSON, J.

