999 P.2d 633 (2000)
100 Wash.App. 878
Richard OCHOA, Appellant,
v.
DEPARTMENT OF LABOR & INDUSTRIES, Respondent.
No. 18599-1-III.
Court of Appeals of Washington, Division 3, Panel Nine.
May 23, 2000.
*634 Michael J. Pontarolo, Michael J. Walker, Delay, Curran, Thompson & Pontarolo, Spokane, for Appellant.
Sheryl L. Gordon, Assistant Attorney General, Spokane, for Respondent.
KATO, J.
Richard Ochoa appeals a decision by the superior court affirming an order of the Board of Industrial Insurance Appeals that denied worker's compensation benefits. Mr. Ochoa contends the Department of Labor & Industries is bound by its earlier decision to award benefits. He also contends he was employed in a capacity covered by industrial insurance at the time of his injury. We affirm.
Mr. Ochoa was a licensed jockey when he was injured while exercising a horse at Playfair Race Course in Spokane on the morning of September 26, 1993. Mr. Ochoa was not riding in a race at the time; he was hired by the horse's owner and trainer, Steve Quionez, to prepare the horse for an upcoming race at Playfair.
Mr. Ochoa filed a claim with the Department after the accident. The Department initially denied the claim on the ground that, as a jockey, Mr. Ochoa was not covered by the industrial insurance system. However, in a decision dated July 22, 1994, the Department reversed itself and agreed Mr. Ochoa was covered. The Department paid Mr. Ochoa $11,550.64 in benefits and charged Playfair Race Course's account for that amount. Playfair protested that Mr. Ochoa was not its employee, and the Department responded by agreeing Playfair had been charged in error.
On February 17, 1995, the Department entered an order finding Mr. Ochoa had been granted benefits improperly, concluding he *635 was not covered because he was a jockey. The Department reversed itself again in an order dated January 25, 1996, holding that the February 17, 1995 order should be set aside and "held for naught." Finally, in an order dated March 20, 1996, the Department reversed itself yet again, holding that its order granting benefits, dated July 22, 1994, was not binding because it was not communicated to Mr. Quionez, Mr. Ochoa's employer at the time of the accident. Another order, dated March 21, 1996, rejected Mr. Ochoa's claim for benefits and demanded repayment of the $11,550.64.
Mr. Ochoa appealed the March 20 and 21 orders to the Board of Industrial Insurance Appeals. An industrial appeals judge issued a proposed decision and order affirming the Department's order of March 20 (which held it was not bound by the July 22, 1994 order), but reversing its order of March 21 (which held Mr. Ochoa was not covered by the industrial insurance system). The three-member board affirmed both of the Department's orders, with one member dissenting.
Mr. Ochoa appealed the board's decision to the superior court, which also affirmed.
Judicial appeal of a decision by the Board of Industrial Insurance Appeals is de novo, but is based solely on the evidence presented to the board. RCW 51.52.115; Romo v. Department of Labor & Indus., 92 Wash.App. 348, 353, 962 P.2d 844 (1998); see Johnson v. Weyerhaeuser Co., 134 Wash.2d 795, 800 n. 4, 953 P.2d 800 (1998).
First, we consider whether the Department was bound by its decision, dated July 22, 1994, that Mr. Ochoa was entitled to benefits. RCW 51.52.050 provides in pertinent part:
Whenever the department has made any order, decision, or award, it shall promptly serve the worker, beneficiary, employer, or other person affected thereby, with a copy thereof by mail, which shall be addressed to such person at his or her last known address as shown by the records of the department. The copy, in case the same is a final order, decision, or award, shall bear on the same side of the same page on which is found the amount of the award, a statement ... that such final order, decision, or award shall become final within sixty days from the date the order is communicated to the parties unless a written request for reconsideration ... or an appeal is filed....
This provision expressly gives an employer a right to protest a Department order within 60 days of when the order is "communicated" to the employer. See Kaiser Aluminum & Chem. Corp. v. Department of Labor & Indus., 57 Wash.App. 886, 889, 790 P.2d 1254 (1990). "An order is considered `communicated' to a party within the meaning of RCW 51.52.050 upon receipt." Id.
Here, it is undisputed that Mr. Quionez was Mr. Ochoa's employer at the time of the accident. It also is undisputed that the July 22, 1994 order was not "communicated" to Mr. Quionez because the Department incorrectly believed Playfair Race Course was the employer. Because the July 22 order was not "communicated" to the employer, it did not become final and thus had no effect.[1]
Moreover, Playfair did timely protest the July 22 order, which Mr. Ochoa concedes. He nevertheless argues Playfair protested only that portion of the order charging its account, not its conclusion that Mr. Ochoa was covered by the industrial insurance system. He cites no authority for his contention that a protested order may have some partial final effect. Even if this were possible, Playfair's protest did raise the coverage issue:
Mr. Ochoa did not work for Playfair Race Course as a worker, and Jockey's [sic] are not covered on L & I. When he was working, he was employed by someone else.
Do not charge our account for this claim.
There is no merit to Mr. Ochoa's argument that the July 22, 1994 order became final and precluded further action by the Department. *636 The Board's and the superior court's orders are correct.
Next, we consider whether Mr. Ochoa was covered by the Industrial Insurance Act. Among the employments excluded from coverage of the Industrial Insurance Act are "[j]ockeys while participating in or preparing horses for race meets licensed by the Washington horse racing commission pursuant to chapter 67.16 RCW." RCW 51.12.020(7). The issue here is whether Mr. Ochoa was excluded under this provision when he was injured.
Mr. Ochoa contends that, although he was a jockey licensed under RCW 67.16.020 and WAC 260-32-010, at the time of the accident he was employed as an exercise rider, not a jockey. The Horse Racing Commission's rules define "jockey" as "a race rider, whether a licensed jockey, apprentice or amateur." WAC 260-12-010(14). Mr. Ochoa relies on this definition to argue that, because he was not a "race rider" at the time of his accident, he should not be considered a "jockey" under RCW 51.12.020(7). But applying this narrow definition from the Horse Racing Commission would render meaningless the clear language of RCW 51.12.020(7), which excludes jockeys while "preparing horses for race meets." This stilted construction would violate the principal objective of statutory construction, which is to carry out the intent of the Legislature. National Elec. Contractors Ass'n v. Riveland, 138 Wash.2d 9, 19, 978 P.2d 481 (1999). A statute should be construed in a way that gives effect to all of its language and no part is rendered superfluous. City of Bellevue v. Lorang, 140 Wash.2d 19, 25, 992 P.2d 496 (2000).
The Department's own rules provide a broader definition of the term "jockey" that reflects the language of RCW 51.12.020(7). Former WAC 296-17-73105 (1997),[2] which established the insurance classification for employees at major horse racing tracks, provided in pertinent part:
For purposes of this rule, jockeys will be considered exercise riders when employed by a trainer and/or owner at a time other than during the dates of a scheduled race meet. A meet, as used in this section, shall be for the duration of the racing season as set for each track by the Washington state horse racing commission.[[3]]
(Emphasis added).
Under this regulation, licensed jockeys will be considered "exercise riders" for purposes of the Industrial Insurance Act only at times other than during a scheduled race meet. The clear implication of the regulation is that, during a scheduled race meet, a licensed jockey will be considered a "jockey" for purposes of RCW 51.12.020(7), even if he or she is not actually riding in a race. It is undisputed that Playfair's 1993 "race meet," under this definition, was from July 2 through November 15. Mr. Ochoa thus was injured during the "race meet" and was a "jockey" who is excluded from coverage.
Mr. Ochoa relies on two prior decisions of the Board of Industrial Insurance Appeals, which the Board overruled in this case. See In re Heath, BIIA No. 68,742 (1985); In re Obrist, BIIA No. 68,775 (1985). In both of those decisions, the court noted, "Analysis of the applicable administrative rules and statute confirms that it is the worker's working status, rather than his licensed status, which controls coverage." Heath at 2; Obrist at 3. In both decisions, the Board relied primarily on a regulatory scheme that classified "racing jockeys" as separate from "exercise boys" and "jockeys ... NOC" (not otherwise classified). As the Board's decision in this case recognized, the regulatory scheme has *637 been changed, as is reflected by WAC 296-17-73105. Whatever the merits of Heath and Obrist, their analytical foundation has been eroded, if not destroyed, by the Department's new regulation.
Mr. Ochoa contends finally that the Department's regulatory scheme, focusing as it does on a jockey's status, rather than his or her actual function, would exclude a jockey from coverage for any employment. However, RCW 51.12.020(7) and WAC 296-17-73105 provide two limits to its exclusion: First, the jockey must be preparing a horse for a licensed race meet. Second, the jockey must be working during the period of a race meet. Whether other activities would satisfy these requirements is an issue for another day. It is clear Mr. Ochoa's case satisfies both.
The superior court properly affirmed the Board's decision.[4]
Affirmed.
KURTZ, C.J., and SWEENEY, J., concur.
NOTES
[1] Although the analysis here is statutory, the constitutional due process implications of denying an employer a statutory right without notice are obvious. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).
[2] The regulation, as revised in 1998, now provides in pertinent part: "Jockeys are considered exercise riders when employed by a trainer and/or owner at a time other than during a scheduled race meet. The dates of a race meet are set for each track by the Washington horse racing commission." WAC 296-17-73105.
[3] The Horse Racing Commission similarly defines "meeting" as "the entire consecutive period for which license to race has been granted to any one association by the commission." WAC 260-12-010(16); see RCW 67.16.010 ("`Race meet' shall mean and include any exhibition of thoroughbred, quarter horse, paint horse, appaloosa horse racing, arabian horse racing, or standard bred harness horse racing, where the parimutuel system is used.")
[4] Mr. Ochoa seeks attorney fees pursuant to RCW 51.52.130, which provides for fees when a board decision is reversed and relief is granted to a worker. Because the Board's decision was properly affirmed, attorney fees are not available.