[No. 81049-4. En Banc.]
Argued March 10, 2009. Decided August 13, 2009.

KELLY L. SHAFER, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Petitioner*.

*Robert M. McKenna, Attorney General, Jay D. Geck, Deputy Solicitor General,* and *John R. Wasberg, Senior Counsel,* for petitioner.

*Philip A. Talmadge* and *Sidney C. Tribe* (of *Talmadge/ Fitzpatrick*) and *Jennifer M. Cross-Euteneier* (of *Vail Cross-Euteneier & Associates*), for respondent.

*Stewart A. Estes* and *Mary E. Levenson* on behalf of Washington Defense Trial Lawyers, amicus curiae.

*Bryan P. Harnetiaux* and *Michael J. Pontarolo* on behalf of Washington State Association for Justice Foundation, amicus curiae.

¶1 ALEXANDER, C.J. — The Department of Labor and Industries (Department) seeks reversal of a decision of the Court of Appeals in which that court held that a worker's compensation claim is not final unless and until the worker's attending physician receives a copy of the Department's order closing the claim. We hold that because the Department's failure to provide the worker's attending physician a copy of the closure order prevented the physician from appealing the order, the worker's claim is not final until 60 days after the attending physician receives a copy of the order. We, therefore, affirm the Court of Appeals.

I

¶2 Kelly Shafer injured her back in 1998 while working at AMF Sports World, a bowling alley in Federal Way. The injury occurred while she was helping another worker lift a

keg of beer into a cabinet. Despite the injury, Shafer continued working at the bowling alley until March 1999. She stopped working at that time because the pain in her back became so severe that it interfered with her ability to perform her job.

¶3 Although Shafer visited several medical practitioners for treatment, she was eventually treated by Dr. Elizabeth Cook, a spinal specialist. Computerized axial tomography (CAT) scans ordered by Dr. Cook revealed that Shafer had sustained broken bones in her vertebrae and a pinched nerve in her lower back. Dr. Cook concluded that Shafer suffered from spondylolysis, a condition where the vertebrae bones are weak and can break.

¶4 On Shafer's behalf, Dr. Cook applied to the Department for reimbursement of the cost of the treatment she provided. Although the Department approved payment for the cost of some of the treatment provided by Dr. Cook, payment for additional x-rays sought by Dr. Cook was denied. The Department also denied payment for an electromyogram, which Dr. Cook wished to obtain in order to check for nerve damage. Thereafter, Shafer visited Dr. Cook a few more times but, according to Dr. Cook, her options for treatment were limited due to the Department's refusal to pay for additional diagnostic testing.

¶5 In July 2000, the Department arranged for an independent medical examination of Shafer. The Department's examiner, Dr. Briggs, concluded that Shafer's condition was fixed and stable and could not be improved with further treatment. He opined that Shafer could return to work without restriction. Based on this report, the Department sent Shafer and Dr. Cook an order closing Shafer's claim.[1]

¶6 The closing order did not make any award to Shafer for disability, indicating that although her preexisting back condition, spondylolysis, was aggravated by the 1998 in-

---

[1] The Department did not provide Dr. Cook a copy of the Briggs report prior to closing Shafer's claim. When Dr. Cook reviewed the report two years after Shafer's claim was closed, she disagreed with the conclusions contained therein.

jury, her back had returned to preinjury status. This order was appealed by Shafer. In response, the Department revised the order and awarded her a permanent partial disability award of $6,773. The Department sent a copy of this order to Shafer and Dr. Cook, but it was not received by Dr. Cook. Indeed, Dr. Cook did not learn of the existence of the revised closing order for nearly three years after it was sent to Shafer.

¶7 Shafer eventually returned to see Dr. Cook in 2003 because, according to Shafer, the pain in her back had become debilitating. After analyzing the results of a magnetic resonance imaging (MRI) procedure, Dr. Cook determined that Shafer's spinal condition had worsened. Dr. Cook then asked the Department to reopen Shafer's claim to provide her with funds for further treatment. The Department declined to do so.

¶8 Shafer appealed the Department's refusal to reopen her claim to the Board of Industrial Insurance Appeals (Board), contending that her physical and mental health had worsened due to the injury. Shafer argued to the Board that her initial claim was never closed because Dr. Cook had not received a copy of the Department's revised closing order. During Shafer's appeal to the Board, Dr. Cook filed an affidavit in which she states that the revised closing order in which Shafer's claim was closed was not communicated to her. Dr. Cook stated that if she had received the order, she would have appealed it because it was her opinion that Shafer needed additional curative treatment.

¶9 An industrial appeals judge (IAJ) determined that Shafer's condition had not become aggravated and affirmed the Department's decision to not reopen her claim. The IAJ also determined that even though the Department's revised closure order was not communicated to Dr. Cook, it had been communicated to Shafer and, thus, the claim was terminated as to her. The Board's chief IAJ and the Board affirmed the IAJ's determination.

¶10 Following receipt of the adverse decision, Shafer appealed to the King County Superior Court. Based on a jury's finding that Shafer's condition had not become aggra-

vated between 2000 and 2003, the trial court denied reopening of her claim. The trial court did not address the question of whether Shafer's claim was still open due to the Department's failure to communicate the closing order to Dr. Cook.

¶11 Shafer next sought review in the Court of Appeals, where she contended that the revised closure order was not final because the revised closing order had not been communicated to Dr. Cook, that substantial evidence did not support the trial court's finding on her petition to reopen the claim, and that the trial court abused its discretion when it ordered Shafer to submit to a CR 35 mental examination. After determining that the claim finality issue was dispositive, the Court of Appeals concluded that the revised closing order had not become final because it was not "received" by Dr. Cook. *Shafer v. Dep't of Labor & Indus.*, 140 Wn. App. 1, 11, 159 P.3d 473 (2007). It did not address the other issues. We granted the Department's petition to review the decision of the Court of Appeals. *Shafer v. Dep't of Labor & Indus.*, 163 Wn.2d 1052 (2008).

II

¶12 The issue before us is whether a department closing order that was sent to the worker and attending physician, but not received by the attending physician, is not final as to the worker and, therefore, subject to a direct protest or direct appeal. This question is one of first impression for this court, and it requires us to interpret provisions of the Industrial Insurance Act (IIA), Title 51 RCW. The Department's interpretation of the IIA is subject to de novo review. *See* RCW 51.52.110, .115, .140.

III

¶13 In 1911, the IIA displaced the common law system that had previously governed the remedies available to workers for injuries received in employment, and it became the exclusive administrative remedy between employer and employee. RCW 51.04.010. The IIA aims to provide a speedy remedy and enable injured workers to become gainfully employed. *Id.*; RCW 51.32.095(4)(a). Additionally, the IIA is to "be liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment." RCW 51.12.010.

¶14 The Department administers the IIA and is responsible for supervising medical treatment for workers injured in the course of employment. RCW 51.04.020(4), .030(1). The IIA provides for a Board, which serves as the administrative review body for department orders, decisions, and awards. RCW 51.52.050. A worker aggrieved by a final decision or order of the Board may appeal to the superior court. RCW 51.52.110.

¶15 An injured worker is entitled to proper and necessary treatment from a physician chosen by the worker. RCW 51.36.010. The Department is required to pay for the treatment provided by the chosen physician. *Id.*; RCW 51.36.080. When a worker suffers a permanent partial disability, payment for treatment ceases upon the award of compensation for the injury. RCW 51.36.010.

¶16 A worker suffering a permanent partial disability is compensated according to the award schedule set forth in RCW 51.32.080. A "[p]ermanent partial disability" is defined as "any anatomic or functional abnormality or loss after maximum medical improvement (MMI) has been achieved." WAC 296-20-19000. Upon achieving the MMI, the worker's condition is considered to be "stable or nonprogressive" at the time the evaluation is made. *Id.* Monetary awards for injuries are "designed to compensate

the worker for the . . . loss of function" of the injured body part. *Id.* When the Department determines that a worker's condition is stable, a closing order is issued "based on factors which include medical recommendation, advice, or examination." RCW 51.32.160(1)(b).

¶17 The dispute here centers on two provisions in the IIA that govern department orders and appeals by aggrieved parties. One of the provisions, RCW 51.52.050(1), provides that "[w]henever the department has made any order, decision, or award, it shall promptly serve the worker, beneficiary, employer, or other person affected thereby, with a copy thereof by mail." Department closure orders can be appealed by "the worker, beneficiary, employer, or other person aggrieved thereby." RCW 51.52-.050(2)(a). Workers and other persons aggrieved, including attending physicians, may ask the Department to reconsider or appeal directly to the Board. *Id.*

¶18 All department orders "shall become final within sixty days from the date the order is communicated to the parties unless a written request for reconsideration is filed with the department . . . or an appeal is filed with the board of industrial insurance appeals." RCW 51.52.050(1). The term "communicated" as used in the statute means that the order, decision, or award is received by the respective party. *Rodriguez v. Dep't of Labor & Indus.*, 85 Wn.2d 949, 952, 540 P.2d 1359 (1975). The appeal procedure is further explained by another provision that is central to this case, RCW 51.52.060(1)(a). It says that

a worker, beneficiary, employer, health services provider, or other person aggrieved by an order, decision, or award [must] file with the board . . . within sixty days from the day on which a copy of the order, decision or award was communicated to such person, a notice of appeal to the board.

RCW 51.52.060(1)(a). Once the 60-day appeal period has expired and the order becomes final, it cannot be appealed.

However, an injured worker may seek to reopen the claim to receive additional medical treatment. RCW 51.32.160.[2]

¶19 For reasons set forth hereafter, we conclude that a worker's claim is not closed until the attending physician has received a copy of the closure order. This holding is justified by the role the attending physician plays in the claims process and the IIA's command to interpret ambiguous portions of the act in favor of injured workers. Interpreting the IIA in this fashion also comports with the general rule that we are to construe acts of the legislature as a whole and harmonize related statutory provisions. *C.J.C. v. Corp. of Catholic Bishop of Yakima*, 138 Wn.2d 699, 708, 985 P.2d 262 (1999).

## IV

¶20 The Department asserts that the phrase "communicated to such person" in RCW 51.52.060(1)(a) indicates that the expiration of the 60-day appeal period is not contingent upon another aggrieved person, i.e., the physician, receiving a closing order. In isolation, this language might appear to indicate that communicating the order to the claimant alone would trigger the commencement of the appeal period. However, a reading of that phrase in concert with RCW 51.52.050(1) reveals that communicating the order to the claimant alone does not necessarily foreclose appeal by "the parties" who did not receive a copy of the closure order.

¶21 There is, in our judgment, an ambiguity created by the differing language in the two statutes as to when an order becomes final. The ambiguity is this: is the department order final only within 60 days from the date the order is "communicated to the parties" (RCW 51.52.050(1)), with the attending physician a party for these purposes? Or is the order final as to any given person 60 days after it is communicated to such person (RCW 51.52.060(1)(a))?

---

[2] There is some discussion in the briefs as to whether certain tribunals have jurisdiction to consider Shafer's claims. The jurisdictional question arose at the Court of Appeals but has been abandoned for the most part by the parties in their appeal to this court.

¶22 The fact that RCW 51.52.060(1)(a) refers to receipt by "such person" for appeal purposes does not, as the Department contends, resolve the ambiguity. To the contrary, the applicable statutes can be interpreted to protect the physician's right to appeal a department closure order. Pursuant to RCW 51.52.050(1), the attending physician who treats an injured worker is an "other person affected" by a department closure order—the Department concedes this point. Accordingly, the attending physician must receive a copy of that order. The main purpose of this requirement, which the Department "fully endorses," is that it allows attending physicians to exercise their rights of appeal under RCW 51.52.050(2)(a) and RCW 51.52.060(1)(a). Suppl. Br. of Dep't of Labor & Indus. at 8.

¶23 Additionally, the term "parties," as we have noted, includes the persons listed in the same subsection—the worker, beneficiary, employer, or other person affected by an order. Precedent indicates that the 60-day appeal period applicable to these parties is flexible. In *Taylor v. Department of Labor & Industries*, 175 Wash. 1, 26 P.2d 391 (1933), this court held that a worker's appeal period was tolled until the issues raised in an attending physician's written protest were addressed.

¶24 Contrary to the Department's interpretation of the relevant statutes, the Court of Appeals has held that if an affected party does not receive a department order, the order does not become final. *Ochoa v. Dep't of Labor & Indus.*, 100 Wn. App. 878, 881-82, 999 P.2d 633 (2000), *rev'd on other grounds*, 143 Wn.2d 422, 20 P.3d 939 (2001). In *Ochoa*, an injured jockey's actual employer did not receive a copy of an order awarding benefits because the Department thought the jockey's employer was someone else. Since the order was not " 'communicated' " to the actual employer, the court held that the order "did not become final and thus had no effect." *Id.* at 882. It noted, also, the due process concerns implicated by denying an affected party a statutory right without notice. *Id.* at 882 n.1.

¶25 The two cases cited by the Department to support its view of the applicable statutes, *Simmerly v. McKee*, 120 Wn. App. 217, 84 P.3d 919 (2004) and *Wells v. W. Wash. Growth Mgmt. Hearings Bd.*, 100 Wn. App. 657, 997 P.2d 405 (2000), are not persuasive. These cases hold that, under the Mandatory Arbitration Rules (MAR) and the Administrative Procedure Act (APA), chapter 34.05 RCW, respectively, each party is independently responsible for timely appealing an adverse decision within the time allotted once the party has received notice of the decision. Neither of these cases dealt with the IIA provisions that are at issue here. Furthermore, the relationship between the worker, attending physician, and the Department cannot be easily analogized to cases involving the MAR or APA, since the attending physician is not a "party" in the traditional legal sense as that term is used in *Simmerly* and *Wells*.

¶26 The IIA makes it abundantly clear that a worker's attending physician plays an important role once the worker has chosen that physician for treatment. For instance, the physician is required to inform the injured worker of his or her rights under the IIA and lend assistance in filing a claim. RCW 51.28.020(1)(b). Physicians are also required to follow rules and regulations adopted by the Department as well as provide reports to the Department regarding treatment given to the worker. RCW 51.36.060. In addition, there are numerous other statutory and regulatory obligations that an attending physician is required to assume once the worker's claim is accepted by the Department. *See, e.g.*, ch. 296-20 WAC.

¶27 The acknowledged requirement that an attending physician is to receive a copy of a closure order demonstrates that he or she is a critical component to the final resolution of claims. Although it is the worker's responsibility to file an initial claim with the Department, *Leschner v. Dep't of Labor & Indus.*, 27 Wn.2d 911, 185 P.2d 113 (1947), once a claim is made, the worker's chosen physician becomes an intricate part of the process until the claim is closed. Contrary to the arguments of the Department and

amicus Washington Defense Trial Lawyers, holding that the finality of a closure order is contingent upon the attending physician's receiving a copy does not enlarge the physician's role under the IIA.

¶28 Allowing claim closure without notifying the attending physician would prevent the person primarily responsible for treating the injured worker from participating in the process that can result in closing a worker's claim. A central purpose of the notice requirement is to allow a party aggrieved by the closure order to seek reconsideration by the Department or to appeal the order to the Board. But when Dr. Cook did not receive the revised closure order, her ability to appeal the order was compromised. *See* WAC 296-20-09701 (attending physician may request reconsideration of department closure orders). If Shafer's appeal window purportedly closed 60 days after Shafer received the order, Dr. Cook would never be able to dispute the Department's determination that Shafer was "stable." The Department provides no rational basis to explain how WAC 296-20-09701, which allows attending physicians to protest closing orders, can be followed by a physician who does not receive a copy of the closure order.

¶29 As stated above, the IIA is to be liberally construed "for the purpose of reducing to a minimum the suffering and economic loss" of injured workers. RCW 51.12.010. Accordingly, this court is required to interpret ambiguities in the IIA in favor of the injured worker. Because the language of RCW 51.52.050 and .060 is ambiguous and Shafer's position is justified by other provisions in the IIA, we construe the statutory provisions in Shafer's favor.

¶30 The Department sets forth a number of scenarios to assert that a liberal interpretation in favor of Shafer here will in fact be detrimental to workers in the future. Most of these hypothetical situations involve an unknown third party who appeals years after the worker has relied on and spent their award. These scenarios are unlike the case

before us. Moreover, our holding that a claim cannot be final until the attending physician receives a copy of the closure order will motivate the Department to fulfill its statutory obligation to communicate its orders to all persons affected by the order.

## V

¶31  In sum, we conclude that Shafer's claim is not final for purposes of appeal because her attending physician, Dr. Cook, did not receive a copy of the Department's closure order. Since, in our judgment, the IIA requires that attending physicians receive closure orders, Shafer's claim would not close until 60 days after all affected parties have received the order. The decision by the Court of Appeals is affirmed.[3]

C. JOHNSON, MADSEN, SANDERS, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., concur.

Reconsideration denied November 2, 2009.

[No. 81445-7.  En Banc.]
Argued May 12, 2009.     Decided August 20, 2009.

---

[3] The Court of Appeals concluded that Shafer's request for attorney fees must abide remand. We decline to review that issue.