978 P.2d 481 (1999)
138 Wash.2d 9
NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, CASCADE CHAPTER, et al., Appellants,
v.
Chase RIVELAND, Director, Department of Corrections, State of Washington, et al., Respondents.
No. 65953-2.
Supreme Court of Washington, En Banc.
Argued September 9, 1998.
Decided June 3, 1999.
*483 Guy J. Sternal, Amy Lewis, Tacoma, Adam L. Sherr, Seattle, for Appellants.
Christine Gregoire, Attorney General, Thomas J. Young, Daniel J. Judge, Robert Battles, Assistant Attorneys General, Olympia, for Respondents.
*482 MADSEN, J.
In this case, we are asked to decide whether the Washington State Department of Corrections is exempt from complying with various state laws relating to electrical licensing, workplace safety, prevailing wage, and competitive bidding where inmate labor is used to perform electrical work on prison facilities. Several chapters of national and local electrical unions challenged both the Washington State Department of Corrections' (DOC) practice and the Washington State Department of Labor and Industries' (DLI) decision not to enforce the statutes against DOC. We conclude that DOC must comply with the electrical licensing and worker safety laws. However, statutes relating to use of inmate labor do provide exemptions for the agency from competitive bidding and prevailing wages on public works.

FACTS
DOC utilizes inmate labor to perform electrical work in the construction and renovation of prison facilities throughout the state. DOC often assigns inmates to construction and renovation projects without first engaging in the competitive bidding process for public works. DOC pays inmates a gratuity rate of one to five dollars an hour, rather than the prevailing wage, for their work on prison facilities.
DOC has promulgated workplace safety and health rules which apply to DOC personnel and inmate workers. These guidelines purport to be consistent with RCW 49.17, the Washington Industrial Safety and Health Act of 1973 (WISHA). However, DOC extends these protections to only some inmates who work on prison facilities.
Since 1979, inmates have participated in the construction and renovation of at least 10 prison facilities which entailed electrical work. Inmates install, replace, and repair electrical systems, light bulbs, fixtures, telephone lines and land communication systems. Most of the inmate workers assigned to electrical work are not licensed electricians. Moreover, although some DOC staff who supervise the electrical work are licensed, none possesses either a valid electrical contractor's license or a contract administrator's certificate.
DLI is the agency responsible for enforcing the statutes relating to electrical licensing, workplace safety, and prevailing wages on public works. None of those statutes specifically exempts DOC, but DLI has generally construed them as inapplicable to DOC. DLI only requires that DOC obtain electrical installation permits and have inspections conducted by DLI electrical inspectors. Notwithstanding the other licensing and certification provisions of RCW 19.28, DLI has systematically approved of the electrical work done by inmates at various prison facilities.
On August 29, 1996, Appellants, five chapters of the National Electrical Contractors Association and seven local unions of the International Brotherhood of Electrical Workers (collectively NECA/IBEW), filed a complaint against DOC and DLI alleging that DOC's practice of assigning inmate labor to perform electrical work on prison facilities violates RCW 19.28 (electrical licensing), RCW 49.17 (WISHA), RCW 39.12 (prevailing wages), and RCW 39.04 (competitive bidding). Further, NECA/IBEW alleged that DLI abused its discretionary authority when it failed to enforce the electrical licensing, WISHA, and prevailing wage statutes against DOC.
NECA/IBEW sought declaratory, injunctive, and mandamus relief to (1) prevent DOC from utilizing inmate labor for electrical work on prison facilities; (2) require DOC to engage in the competitive bidding process before assigning inmates to perform electrical work; (3) require DOC to pay inmates the prevailing wage; (4) require DOC to *484 comply with WISHA; and (5) compel DLI to enforce the electrical licensing requirements, WISHA, and prevailing wage laws against DOC.
On January 23, 1997, in response to the present litigation, DLI prepared a draft policy stating that RCW 19.28 requires DOC to comply with the electrical licensing provisions, and that inmates performing electrical work on prison facilities cannot qualify for an exemption from certification. However, DLI has never formally adopted nor implemented the draft policy.
On March 7, 1997, the trial court dismissed with prejudice NECA/IBEW's claims that DOC violated the prevailing wage and competitive bidding laws. The trial court also granted DLI's motion to dismiss DLI from the action, finding that DLI was not a necessary party to the suit because the director and DLI have discretion to determine when, who, and how to inspect, and whether to issue citations.
On April 4, 1997, the trial court denied NECA/IBEW's motion to reconsider its dismissal of DLI.
On September 19, 1997, the trial court entered summary judgment in favor of DOC, finding that NECA/IBEW did not have standing to bring claims on behalf of inmate workers under WISHA, and that DOC has broad statutory authority to utilize inmate labor to perform electrical work notwithstanding RCW 19.28's licensing and certification requirements under the statutes allegedly violated.
Appellants appealed to this court, which granted direct review.

RCW 19.28

Electricians and Electrical Installations
NECA/IBEW maintains that DOC must comply with the electrical licensing requirements of RCW 19.28 before it can assign inmate labor to do electrical work on prison facilities.
RCW 19.28.120(1) provides in relevant part:
It is unlawful for any person, firm, partnership, corporation, or other entity to engage in, conduct, or carry on the business of installing or maintaining wires or equipment to convey electric current, or installing or maintaining equipment to be operated by electric current as it pertains to the electrical industry, without having an unrevoked, unsuspended, and unexpired electrical contractor license, issued by the department in accordance with this chapter.
RCW 19.28.005(7) defines "[e]lectrical contractor" as "a person, firm, partnership, corporation, or other entity that offers to undertake, undertakes, submits a bid for, or does the work of installing or maintaining wires or equipment that convey electrical current." Based on this definition, there is no question that DOC has assigned, and continues to assign, inmates to perform a variety of electrical work on prison facilities through the agency's inmate work programs. Thus, because inmates install and maintain electrical systems and other equipment which convey electrical current, DOC's practice falls within the scope of RCW 19.28.
Under RCW 19.28, an electrical contractor must designate an individual as an electrical administrator before electrical work begins. RCW 19.28.120(5). In addition, the statute prohibits any person from engaging in the electrical construction trade without a current journeyman electrician certificate. RCW 19.28.510(1). The statute defines "[e]lectrical construction trade" as including but not limited to the practice of "installing or maintaining electrical wires and equipment that are used for light, heat, or power and installing and maintaining remote control, signaling, power limited, or communication circuits or systems." RCW 19.28.005(6).
The exemptions to RCW 19.28 are limited to persons who perform electrical work at their residence, farm, or place of business; persons making electrical installations on their own property; regularly employed employees working on the premises of their employer; and employees of an employer who is engaged in utility type work. RCW 19.28.610.
There is no question that DOC does not comply with the certification and licensing provisions of RCW 19.28. DOC does not *485 have a certified administrator at each DOC facility. Many, if not most, of the inmates DOC assigns to electrical work do not possess journeyman electrician certificates, although inmates routinely engage in the installation, repair, and maintenance of electrical fixtures and systems on prison facilities.
Nevertheless, DOC argues that it is exempt from compliance with the requirements of RCW 19.28 either because its conduct falls within the exemptions provided in RCW 19.28.610 or because it has unfettered discretion over inmate labor pursuant to RCW 72.09.100 and RCW 72.01.110. We address each of these arguments in turn.
Although DOC recognizes that the purpose behind RCW 19.28 is to safeguard the public from dangerous electrical installations and unscrupulous electrical contractors, DOC believes that the Legislature also intended to allow unlicensed individuals to perform electrical work where they are assigned as agents to such work on the premises of the principal. DOC does not argue that its practice fits explicitly within any specific exemption provided by RCW 19.28.610. Rather, DOC submits that inmates who do electrical work on prison facilities are akin to persons making electrical installations on their own property or employees working on the premises of their employer, an exemption provided for by RCW 19.28.610(1).[1]
Express exceptions in a statute suggest the Legislature's intention to exclude other exceptions. Weyerhaeuser Co. v. Tri, 117 Wash.2d 128, 133-34, 814 P.2d 629 (1991). Clearly, DOC's practice does not constitute any of the exemptions contemplated by the statute, since inmates are not performing work on their own property, they are not employees working on an employer's premises, and DOC is not a utility. Thus, we reject DOC's argument that it is exempt under the electrical statute, because RCW 19.28.610 does not provide an exemption for inmates who perform electrical work in prison facilities.
There is no dispute that the statutes from which DOC claims exemption do not expressly exempt DOC. In fact, each of those statutes contains language that potentially applies to DOC as a public agency and employer.[2] Notwithstanding the requirements of those statutes, however, DOC argues that RCW 72.09.100 and RCW 72.01.110 provide the department with broad authority to bypass those and any other statutory restrictions if they impede the implementation of inmate work programs.
RCW 72.09.100 charges DOC with the administration of inmate work programs from which the agency then determines inmate work assignments. In relevant part the statute provides:
It is the intent of the legislature to vest in the department the power to provide for a comprehensive inmate work program and to remove statutory and other restrictions which have limited work programs in the past. For purposes of establishing such a comprehensive program, the legislature recommends that the department consider adopting any or all, or any variation of, the following classes of work programs:
Pursuant to RCW 72.01.110, DOC has authority to utilize inmate labor in the construction or repair of prison facilities. Specifically the statute provides:
The department may ... call for bids and award contracts for the erection of new buildings, or for repairs, changes, or additions to buildings already constructed: PROVIDED, That the department may proceed with the erecting of any new building, or repairs, changes, or additions *486 to any buildings already constructed, employing thereon the labor of the inmates of the institution, when in its judgment the improvements can be made in as satisfactory a manner and at a less cost to the state by so doing.
DOC interprets RCW 72.09.100 as a clear legislative grant of discretion over the internal affairs of prison management, particularly with regard to assigning inmates to prison jobs. When read together with RCW 72.01.110, DOC argues, the agency's authority to utilize inmate labor is not subject to any regulatory prerequisites, such as obtaining technical certification or other means of qualifying the skills of inmate labor.
On questions of statutory interpretation the Supreme Court is the final arbiter. Multicare Med. Ctr. v. Department of Soc. & Health Servs., 114 Wash.2d 572, 582-83, 790 P.2d 124 (1990). Review is de novo. Dioxin/Organochlorine Ctr. v. Pollution Control Hr'gs Bd., 131 Wash.2d 345, 352, 932 P.2d 158 (1997). The primary goal in statutory interpretation is to ascertain and give effect to the intent of the Legislature. In re Electric Lightwave, Inc., 123 Wash.2d 530, 536, 869 P.2d 1045 (1994); State v. Wilson, 125 Wash.2d 212, 216-17, 883 P.2d 320 (1994). In order to determine legislative intent, we begin with the statute's plain language and ordinary meaning. Electric Lightwave, Inc., 123 Wash.2d at 536, 869 P.2d 1045 (citing Department of Transp. v. State Employees' Ins. Bd., 97 Wash.2d 454, 458-59, 645 P.2d 1076 (1982)); Louisiana-Pacific Corp. v. Asarco Inc., 131 Wash.2d 587, 600, 934 P.2d 685 (1997).
Although RCW 72.09.100 vests DOC with the power to establish inmate work programs, we decline to read the statute as an open-ended grant of authority over inmate labor. See Municipality of Metro. Seattle v. Public Employment Relations Comm'n, 118 Wash.2d 621, 826 P.2d 158 (1992). Rather, RCW 72.09.100 provides specific guidelines for DOC administration of inmate work programs, indicating a legislative intent to define the parameters of DOC work program administration. See RCW 72.09.100(1) through (4). DOC is charged with implementing those legislatively recommended provisions, but the statute also recommends how inmate work programs should be implemented, e.g., the supervising entity, nature of work, whether inmate participation is voluntary, and the rate of compensation for each class of work program.[3] Thus, although RCW 72.09.100 directs DOC to "provide for a comprehensive inmate work program", the Legislature has also articulated a framework of basic standards to guide DOC administration.
Similarly, RCW 72.01.110 provides a broad statement of DOC's authority to use inmates to perform construction work. The statute applies not only to electrical work but to construction work generally. And, although the statute provides DOC with the discretion to bypass competitive bidding requirements, it does so only if the work can be performed "in as satisfactory a manner and at a less cost to the state...." RCW 72.01.110. Rather than the open-ended authority DOC argues for, the Legislature has clearly placed limits on the department's use of inmate labor.
DOC argues, however, that broad discretion to utilize inmate labor under RCW 72.01.110 is necessary to fulfill legislative policy goals articulated in RCW 72.09.010, such as inmate job training, rehabilitation, and cost-efficient management of prison resources. See generally RCW 72.09.010. According to DOC, application of RCW 19.28 to DOC would contravene those goals and the purpose of inmate work programs, e.g., stressing "personal responsibility," or providing inmates with a strong work ethic, opportunities for "self improvement" and practical *487 work opportunities. See RCW 72.09.010(3), (5)(b) and (c). Moreover, requiring the agency to adhere to certain statutory requirements would contravene the legislative intent and policy behind RCW 72.09 because compliance would be too costly. Thus, DOC believes this court should defer to DOC's administration of inmate work programs.
Where prison management is at issue, the policy goals behind RCW 72.09 strongly favor a broad reading of the agency's authority to utilize inmate labor. Judicial deference has been typically accorded to measures relating to prison management of inmate discipline and institutional security. See Foss v. Department of Corrections, 82 Wash.App. 355, 358-59, 918 P.2d 521 (1996) (community college instructors not allowed on facility's grounds) (citing Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). However, unlike the cases in which deference has been given, such as in Foss, the alleged statutory violations in this case do not implicate DOC's disciplinary or security measures, or even the mere administrative assignment of inmates to prison jobs. Rather, the issues raised by NECA/IBEW stem from DOC's labor practice of assigning unlicensed/untrained inmates to perform a variety of electrical work on public buildings (correctional centers), a trade which the Legislature has strictly regulated with limited exemptions and governed by extensive worker safety and health rules. See generally RCW 19.28; RCW 19.28.610; RCW 49.17; WAC 296-44; WAC 296-45; WAC 296-46.
Moreover, as NECA/IBEW argue, the licensing provisions of RCW 19.28 outweigh the purpose of RCW 72.09.100 because the electrical laws provide assurances that individuals performing the inherently dangerous task of electrical work are trained and competent. To this end, three chapters of WISHA regulations relating to electrical safety standards articulate the health and safety concerns relating to electrical work. See WAC 296-44; WAC 296-45; WAC 296-46. That inmates' electrical work has been found to be defective and in need of correction demonstrates that the regulatory purpose and health and safety concerns addressed by RCW 19.28 are equally applicable to inmate labor.
Indeed, our decision in City of Seattle v. State, 136 Wash.2d 693, 965 P.2d 619 (1998) recognized the inherent danger of electrical work and the public interest in health and safety. In that case, we held that a city was an "entity" for purposes of the statute. Id. Consequently, the city's practice of assigning unlicensed individuals to engage in electrical work at low-income residential units through its program for homeless adults, violated RCW 19.28. Id. at 695-96, 965 P.2d 619. We find the inherent danger of electrical work and the concern for health and safety are the same, regardless of whether such work is performed for residents of low-income housing or on prison facilities.
Compliance with RCW 19.28 ensures that electrical work is performed safely and competently. Requiring DOC to comply with RCW 19.28 may even reinforce the quality and legitimacy of inmate labor. Thus, the concern for health and safety constitutes an important public interest and does not contravene the statutory purpose of inmate work programs. RCW 19.28 contains specific language strictly prohibiting unlicensed individuals from engaging in electrical work, and contemplates few exceptions to compliance. We conclude the Legislature's purpose of protecting the public interest in health and safety outweighs the general goals of inmate rehabilitation and cost-saving measures.
DOC also defends its practice by relying on the intent language in RCW 72.09.100 which it argues vests it with authority "to remove statutory and other restrictions." Initially, we are not convinced that by this language the Legislature intended to imbue DOC with such broad administrative power. Unless a claimed exemption from a given statute is expressly provided for, the Legislature determines whether an administrative agency is exempt from compliance. City of Auburn v. King County, 114 Wash.2d 447, 788 P.2d 534 (1990); see also Weyerhaeuser Co., 117 Wash.2d at 133-34, 814 P.2d 629 (express exceptions exclude all other exceptions). Delegation of such legislative power to an administrative agency entails generally defining what is to be done, specifying who is *488 to do it, and the existence of procedural safeguards to control administrative abuse. Id. Here, procedural safeguards do not exist to prevent administrative abuse in DOC's exercise of its supposed statutory authority "to remove statutory and other restrictions" in the development of inmate work programs. RCW 72.09.100.
In addition, construing RCW 72.01.110 as authorizing DOC to exempt itself from any statutory restriction it deems an impediment to inmate work programs would result in the unlikely consequence that statutory requirements which generally apply to most, if not all, state agencies and employers would not apply to DOC. See State v. Burke, 92 Wash.2d 474, 598 P.2d 395 (1979) (rule of statutory construction that absurd or unlikely result be avoided). Rather than construe the reference to removing "statutory and other restrictions" in RCW 72.09.100 as a grant of authority to DOC to exempt itself from RCW 19. 28, we read the language as a broad statement of legislative intent underlying the statutes relating to use of inmate labor. Thus, we conclude that noncompliance with RCW 19.28, does not fall within DOC's discretion.
DOC argues, though, that the Legislature has effectively acquiesced in its practice of assigning inmates to perform electrical work on prison facilities. DOC argues that its practice, dating back at least 10 years, is valid given the statute's silence and because the Legislature has not voiced an objection to inmates performing electrical work. Legislative silence, however, is not determinative as to the propriety of an agency's actions. Electric Lightwave, Inc., 123 Wash.2d at 540, 869 P.2d 1045.
DOC also asks this court to give weight to DLI's long-standing approval of DOC's practice: because DLI is the agency charged with enforcing the statutes in question, we should defer to DLI's decision to approve DOC's practice of assigning inmates to perform electrical work. We disagree. Whether DOC must comply with the statutes at issue is a question of law and therefore, outside the purview of DLI's functions or purpose as an enforcement agency. See Multicare Med. Ctr., 114 Wash.2d at 582, 790 P.2d 124 (Supreme Court is final arbiter of questions of statutory interpretation); also Tuerk v. Department of Licensing, 123 Wash.2d 120, 125, 864 P.2d 1382 (1994) (agency does not have implied authority to determine issues outside of its delegated functions or purpose).
Finally, DOC cites the principle that if statutes are irreconcilable, a specific statute supersedes a more general one. Waste Management of Seattle, Inc. v. Utilities & Transp. Comm'n, 123 Wash.2d 621, 630, 869 P.2d 1034 (1994). The broad intent language of the inmate work statutes is arguably at odds with the requirements of the electrical licensing laws. DOC contends that in this case RCW 72.01.110 and RCW 72.09.100 are specific to DOC and thus control over the more general licensing laws. Although DOC states the correct principle of law, the statutes relating to electrical licensing are specific and provide for limited exemptions, in contrast to the general directives of RCW 72.01.110 and RCW 72.09.100. We conclude that the specific provisions of RCW 19.28 must prevail over the more general statutes relating to inmate labor and that DOC must comply with the electrical licensing and certification provisions under RCW 19.28 when assigning inmates to perform electrical work on prison facilities.

RCW 49.17

Washington Industrial Safety and Health Act (WISHA)
The purpose of RCW 49.17 is to "assure... safe and healthful working conditions for every man and woman working in the state of Washington." RCW 49.17.010. To this end, the statute requires every employer to furnish to each employee a place of employment free from recognized hazards that are causing or likely to cause serious injury or death. RCW 49.17.060(1). DLI is charged with the task of enforcing various workplace safety and health standards. RCW 49.17.030 and .040; RCW 49.17.070.
The trial court ruled that NECA/IBEW does not have standing to bring an action against DOC for a violation of RCW *489 49.17. Although it is unclear from the record, the trial court appears to have based its ruling on DOC's assertion that the statute does not apply to most inmates because they are not considered "employees," and that because NECA/IBEW members are neither employees nor inmates, the union does not have standing to seek an injunction against DOC under RCW 49.17.170(4).[4]
Whether NECA/IBEW has standing to bring an action against DOC is not determined by the status of inmates as employees or non-employees, nor by the union's representative capacity, because NECA/IBEW seeks declaratory relief against DOC. NECA/IBEW and its union members have asserted a distinct pecuniary interest over and above the general public or random taxpayer.[5] The cost savings related to DOC's noncompliance with RCW 49.17 when using inmate labor deprive NECA/IBEW and its union members the opportunity to effectively compete for employment and contracts. Therefore, NECA/IBEW may challenge the way DOC assigns inmate workers to prison jobs, not only as to the electrical licensing and public works statutes, but also under RCW 49.17.
The next question is whether WISHA protection should be extended to all inmate workers. DOC assigns inmates from Class II and Class III to perform electrical work. DOC concedes that WISHA protection applies to Class II inmates, but that it does not extend the same safety and health protection to Class III inmates who perform the same kind of electrical work.[6] DOC urges this court to construe the statute narrowly and find that WISHA does not apply to all inmate workers performing electrical work, because Class III inmates are not technically considered "employees."[7]
RCW 72.09.135 requires DOC to establish minimum health and safety standards for the operation of state adult correctional facilities. RCW 72.09.135 provides in relevant part:
The department of corrections shall, no later than July 1, 1987, adopt standards for the operation of state adult correctional facilities. These standards shall be the minimums necessary to meet federal and state constitutional requirements relating *490 to health, safety, and welfare of inmates and staff, and specific state and federal statutory requirements, and to provide for the public's health, safety, and welfare. The need for each standard shall be documented.
The statute permits DOC to establish health and safety standards less stringent than WISHA. But DOC does not assert this discretionary authority to support its position. Rather, DOC maintains that WISHA protection should only extend to inmates who are "employees," i.e., Class II inmates who are deemed employees because of their coverage under industrial insurance.[8] Class III inmates, on the other hand, are not considered "employees." Therefore, DOC argues, its obligation with regards to "non-employee" inmates is only to provide a safe workplace consistent with the Eighth Amendment prohibition on cruel and unusual punishment. See, e.g., Wallis v. Baldwin, 70 F.3d 1074 (9th Cir.1995) (correctional officials forcing inmates to tear off loose pipe covering with insufficient protection from asbestos violated Eighth Amendment).
However, pursuant to RCW 72.09.135, DOC has adopted an internal policy that purports to be consistent with WISHA standards, applicable to inmate workers and DOC personnel:
It is the policy of the Division of Correctional Industries in conjunction with the Department of Corrections Safety Program Policy ... to provide a safe an [sic] healthful working environment at its operating sites and to ensure compliance with state law (Washington Industrial Safety and Health Act [WISHA]).
Clerk's Papers at 822.
Thus, while RCW 72.09.135 permits DOC to adopt less stringent workplace health and safety standards, DOC exercised its discretion and adopted WISHA for all inmates and DOC personnel when it articulated its policy and intent to comply with WISHA. Having adopted WISHA, DOC must extend WISHA protection to all inmate workers.

RCW 39.04

Competitive Bidding
While it may be true that most public works projects are subject to competitive bidding,[9] RCW 72.01.110 expressly provides that DOC may opt not to solicit bids for prison projects.

The department may ... call for bids and award contracts for the erection of any new building, or for repairs, changes, or additions to any buildings already constructed: PROVIDED, That the department may proceed with the erecting of any new building, or repairs, changes, or additions to any buildings already constructed, employing thereon the labor of the inmates of the institution, when in its judgment the improvements can be made in as satisfactory a manner and at a less cost to the state by so doing.
RCW 72.01.110 (emphasis added).
The statute is clear. RCW 72.01.110 grants DOC the discretionary authority to utilize inmate labor in the construction and repair of prison facilities without first engaging in the competitive bidding process. The statute's express use of the term "may" is permissive and does not create a duty to solicit bids on the part of DOC. See Yakima County (W.Valley) Fire Protection Dist. No. 12 v. City of Yakima, 122 Wash.2d 371, 381, 858 P.2d 245 (1993) (the term "may" in a statute has a permissive or discretionary meaning). Thus, DOC's decision to utilize inmate labor rather than solicit bids from private contractors is permitted.
We note, however, that DOC's discretion is not absolute. Agency action is scrutinized under an arbitrary and capricious standard. RCW 34.05.570(4)(c)(iii). In general, agency action is deemed arbitrary *491 and capricious if it is willful and unreasoning, and taken without consideration and in disregard of the facts and circumstances. See Heinmiller v. Department of Health, 127 Wash.2d 595, 903 P.2d 433 (1995). Under this standard, DOC's decision to utilize inmate labor must be based on a reasonable determination that the improvements to prison facilities can be accomplished "in as satisfactory a manner and at a less cost to the state...." RCW 72.01.110.
NECA/IBEW insists, however, that in order for DOC to demonstrate that inmate labor would be "as satisfactory" and "at a less cost to the state," DOC must first undergo competitive bidding. The need for competitive bidding of DOC projects, NECA/IBEW argues, was shown in one instance where DOC allegedly chose to utilize more expensive inmate labor even after soliciting bids from private contractors whose labor costs were less. The comparative cost of inmate labor versus private contractors after competitive bidding is not helpful guidance in our inquiry. Whether DOC violated the competitive bidding statute is immaterial since RCW 72.01.110 does not require DOC to engage in competitive bidding.
It is clear that RCW 72.01.110 grants DOC the discretionary authority to determine in its judgment, the nature and extent to which inmate labor is deemed "as satisfactory" and "at a less cost to the state." As such, the requirements of competitive bidding do not come into play in our scrutiny of DOC's exercise of its discretionary authority. Rather, we look to the requirements of RCW 72.01.110 to ascertain the restraints on DOC's exercise of discretion. The Administrative Procedure Act, in turn, defines the scope of DOC's authority to determine whether inmate labor is "as satisfactory" and "at a less cost to the state." RCW 72.01.110. To this end, a violation of RCW 72.01.110 will only be found where DOC has abused its discretion. RCW 72.01.110; e.g., Heinmiller, 127 Wash.2d at 609-10, 903 P.2d 433. Because NECA/IBEW fails to show how DOC acted in an arbitrary and capricious manner when choosing to utilize inmate labor over private contractors, it has failed to show that the department has abused its discretion under RCW 72.01.110.

RCW 39.12.020

Prevailing Wages on Public Works
DOC argues that it need not pay inmate labor the prevailing wage as otherwise required by RCW 39.12.020.[10] RCW 72.09.100(2) and (3) provide that Class II and III inmates are to be paid a gratuity rate for their work:
Inmates working in this class of industries shall do so at their own choice and shall be paid for their work on a gratuity scale which shall not exceed the wage paid for work of a similar nature in the locality in which the industry is located and which is approved by the director of correctional industries.
RCW 72.09.100(2) (referring to "Class II inmates") (emphasis added).
Except for inmates who work in work training programs, inmates in this class shall be paid for their work in accordance with an inmate gratuity scale.

RCW 72.09.100(3)(c) (referring to "Class III inmates") (emphasis added).
The statute grants DOC discretionary authority to develop a "gratuity scale" based on the different classes of inmates. See generally RCW 72.09.100. NECA/IBEW contends that, with respect to Class II inmates, the statute requires DOC to pay those inmates at least the prevailing wage. We disagree. The statute specifically authorizes DOC to develop a gratuity scale of compensation "which shall not exceed the wage paid for work of a similar nature in the locality in which the industry is located...." RCW 72.09.100(2). That is, DOC is authorized to pay inmate workers not less than the established gratuity rate, and no more than the *492 prevailing wage for certain classes.[11]See In re Personal Restraint Petition of Locklear, 118 Wash.2d 409, 418, 823 P.2d 1078 (1992) (the word "shall" in a statute creates an imperative obligation). Thus, RCW 72.09.100 renders RCW 39.12.020 inapplicable to DOC's practice of assigning Class II and III inmate labor to electrical work.

WRIT OF MANDAMUS
NECA/IBEW sought mandamus against DLI to compel the agency's enforcement of electrical licensing, WISHA, and prevailing wage laws against DOC. The trial court dismissed DLI from the action on grounds that the agency is not a necessary party to the action. Further, the trial court concluded that, as the agency charged with enforcing the statutes in question, DLI has the discretion to determine when, who, and how to inspect, and whether to issue citations.
DLI's enforcement powers include performing investigations, conducting inspections, and issuing citations. See generally RCW 19.28, RCW 39.12, RCW 49.17. As a practical matter, decisions associated with exercising these enforcement powers are discretionary. See, e.g., Heckler v. Chaney, 470 U.S. 821, 831, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) (holding a presumption of unreviewability of decisions of agency not to undertake enforcement action); Nerbun v. State, 8 Wash.App. 370, 376, 506 P.2d 873 (1973) (Department of Labor and Industries' duty to conduct spot inspections of workplaces is not absolute).
NECA/IBEW maintains that because DLI has historically approved of DOC's practice and otherwise did not enforce the statutes against DOC, mandamus lies to compel DLI enforcement.
In Aripa v. Department of Soc. & Health Servs., 91 Wash.2d 135, 588 P.2d 185 (1978), this court explained the limits of a mandamus action with respect to an agency's exercise of discretion:
Mandamus lies to compel discretionary acts of public officials when they have totally failed to exercise their discretion to act, and therefore it can be said they have acted in an arbitrary and capricious manner. Once officials have exercised their discretion, mandamus does not lie to force them to act in a particular manner.
Id. at 140, 588 P.2d 185. Agency action is arbitrary and capricious if it is willful and unreasoning, and taken without consideration and in disregard of the facts and circumstances. See RCW 34.05.570(4)(c)(iii); see also Heinmiller, 127 Wash.2d at 609-10, 903 P.2d 433.
Here, there is no question that DLI has exercised its discretionary authority in deciding not to enforce the electrical licensing, WISHA, and prevailing wage laws against DOC. The record indicates that DLI's historical approval of inmates' electrical work on prison facilities, and the agency's decision not to enforce the statutes, were decisions based on the agency's determination that those statutes were inapplicable to DOC's statutory authority to utilize inmate labor. To the extent that DLI believed it could enforce electrical licensing standards over DOC, the record indicates that in addition to conducting inspections of electrical work at prison facilities, DLI has also required DOC to obtain electrical installation permits.
DLI's decision not to enforce the electrical licensing statute was not arbitrary and capricious. Since we have resolved NECA/IBEW's claims under the electrical licensing, WISHA, competitive bidding, and the prevailing wage laws, the questions posed by the request for a writ of mandamus are effectively resolved as to the future.

CONCLUSION
We hold that DOC must comply with RCW 19.28 and RCW 49.17, but that DOC's statutory authority to assign inmate labor under RCW 72.01.110 and RCW 72.09.100 provides exemptions for DOC from RCW 39.04 and RCW 39.12.020.
GUY, C.J., and SMITH, JOHNSON, ALEXANDER, SANDERS, JJ., concur.
*493 TALMADGE, J. (dissenting).
I respectfully dissent to the extent the majority concludes the Department of Corrections (Department) must comply with chapter 19.28 RCW (electricians and electrical installations) and chapter 49.17 RCW (Washington Industrial Safety and Health Act (WISHA)). The courts have no subject matter jurisdiction of the appellants' claims because there is no private right of action under those chapters. Even if there were private rights of action, I would dismiss these claims for lack of justiciability because they call for a sociopolitical decision best left to the Legislature and the Governor under our separation of powers doctrine.
A. No Private Right of Action under WISHA
The contractors and unions are asserting a third-party cause of action under WISHA on behalf of prison inmates. They allege the use of unlicensed and uncertified prison inmates to perform electrical work "poses a danger to the laborers and to the public." Clerk's Papers at 19. They further argue in advocating for the application of WISHA, "the performance of electrical work by improperly-trained, uncertified workers poses significant health and safety risks to those performing the work, those later re-doing the work and the public at large later occupying the constructed premises." Clerk's Papers at 425. Thus, it would seem the contractors, in particular, brought this action out of selfless concerns for the safety of inmates and the public. When pressed to identify their standing, however, they said:
Plaintiffs have a unique pecuniary interest in the outcome of this litigation. If forced to comply with State law, DOC will by their own admission be required to bid out more electrical work at DOC facilities. Plaintiffs will clearly benefit from said work and therefore have standing to pursue this action against DOC.
Clerk's Papers at 1053. I am dubious that there is a cause of action under WISHA to protect and promote commercial competitiveness in the electrical contracting business. Nor do I believe any other private right of action exists under WISHA.
The federal courts have been unanimous in holding there is no private right of action by employees against employers for violation of the federal Occupational Health and Safety Act (OSHA). John P. Ludington, Annotation, OSHA Violation by Employer or Third Party as Providing Cause of Action for Employee, 35 A.L.R. Fed. 461 (1977). As one court explained:
The Occupational Safety and Health Act of 1970 imposes a duty on employers and provides for enforcement of that duty by criminal sanctions, civil penalties recoverable by the United States for deposit into the Treasury of the United States and, under certain circumstances, injunction of the violation of the duty by a district court acting upon application of the Secretary of Labor. See 29 U.S.C.A. §§ 662, 666. Congress has set up a comprehensive system for the promulgation and enforcement of regulations and standards under OSHA. Nowhere in the language of the Act, its legislative history, or in the statutory declaration of purpose and policy in the Act itself is there the slightest implication that Congress considered OSHA creating a private right of action for violation of its terms. See 1970 U.S.CODE CONG. & ADMIN. NEWS, pp. 5177-5241; 29 U.S.C.A. § 651....
The provisions for the enforcement of OSHA and the regulations promulgated thereunder are sufficiently comprehensive to make such a private right of action unnecessary to effectuate the congressional policy underpinning the substantive provisions of the statute.
Jeter v. St. Regis Paper Co., 507 F.2d 973, 976-77, 35 A.L.R. Fed. 449 (5th Cir.1975). Accord Elliott v. S.D. Warren Co., 134 F.3d 1, 4 (1st Cir.1998); Donovan v. Occupational Safety & Health Review Comm'n, 713 F.2d 918, 926 (2d Cir.1983); Dravo Corp. v. Occupational Safety & Health Review Comm'n, 613 F.2d 1227, 1230 n. 2 (3d Cir.1980); Ellis v. Chase Communications, Inc., 63 F.3d 473, 477, 153 A.L.R. Fed. 693 (6th Cir.1995); Mason v. Ashland Exploration, Inc., 965 F.2d 1421, 1425 (7th Cir.1992); Crane v. Conoco, Inc., 41 F.3d 547, 553 (9th Cir.1994).
*494 WISHA mirrors OSHA. Only under the following circumstance does an employee have a cause of action:
If the director arbitrarily or capriciously fails to invoke his restraining authority under RCW 49.17.130 or fails to seek relief under this section, any employee who may be injured by reason of such failure, or the representative of such employees, may bring an action against the director in the superior court for the county in which the danger is alleged to exist for a writ of mandamus to compel the director to seek such an order and for such further relief as may be appropriate or seek the director to exercise his restraining authority under RCW 49.17.130.
RCW 49.17.170(4).[1] A nearly identical provision appears in OSHA at 29 U.S.C.A. § 662(d) (1998). Thus, only if the Director of the Department of Labor and Industries arbitrarily or capriciously fails to enforce WISHA does an employee have a cause of action, and that cause of action is not against the employer, but is a writ of mandamus against the Director.
WISHA imposes duties on employers to furnish employees workplaces free of known hazards. RCW 49.17.060(1). It sets out criminal penalties for enforcement. RCW 49.17.190. It provides for imposition of civil penalties recoverable by the Department of Labor and Industries for deposit into the supplemental pension fund established by RCW 51.44.033. RCW 49.17.180(8). It provides for the issuance of injunctions and temporary restraining orders to enjoin workplace violations. RCW 49.17.170. In enacting WISHA, the Legislature established a comprehensive program designed to promote workplace safety through the promulgation and enforcement of workplace regulations. RCW 49.17.040.100. Nowhere in the language of WISHA, its legislative history, or in the statutory declaration of purpose and policy in the act itself is there the slightest hint the Legislature intended WISHA to create a private right of action for employees against employers for violation of the act, or, more remotely, a private right of action for third parties to the employment relationship, as here. Rather, the act speaks only to enforcement by the Department of Labor and Industries.
In the case at bar, the appellants have asserted, as third parties, a private right of action to enforce WISHA in the prison labor context.[2] While I might personally prefer a statutory right of action for employees to sue employers under WISHA, whether such suits should be allowed is a matter of public policy for the Legislature to decide. Only the Legislature has the authority to create legal rights and interests outside the realm of constitutional law. See Premium Fin. Corp. of Am. v. Crump Ins. Servs. of Memphis, Inc., 978 S.W.2d 91, 93 (Tenn.1998). The Legislature has not provided for employee suits under WISHA, much less for third parties. The Court should hold it has no subject matter jurisdiction to consider a WISHA enforcement suit brought by a private citizen.[3]
B. No Private Right of Action under Chapter 19.28 RCW
The chapter of the Revised Code of Washington dealing with electricians and electrical installations appears in Title 19, Miscellaneous Business Regulations. The purpose of the chapter is to establish statutory means of regulating the business of electricians in the State of Washington. To that end, the Legislature placed supervision of electrical work *495 under the Director of the Department of Labor and Industries, RCW 19.28.070, and created a board to advise the Director on standards of electrical installation, minimum inspections procedures, and the adoption of rules and regulations pertaining to the electrical inspection division. RCW 19.28.065. The Legislature gave the authority to enforce the provisions of chapter 19.28 RCW only to the Director. RCW 19.28.070. Nowhere in the chapter has the Legislature given any other person the authority to enforce the chapter. Nor has the Legislature created a right of action for anyone to bring suit under any of the provisions of the chapter. In other business regulations, the Legislature, by contrast, has created private rights of action.
The statutory scheme of chapter 18.130 RCW, the Uniform Disciplinary Act (UDA), is instructive. The UDA applies to 13 health care professions, from dispensing opticians to dieticians and nutritionists. RCW 18.130.040(2)(a). The UDA specifically allows any person to maintain an action on behalf of the State to enjoin violations of RCW 18.130.170 (incapacity of license holder to practice) and RCW 18.130.180 (unprofessional conduct), and to enjoin a person from practicing without a required license. RCW 18.130.190(2). Thus, the UDA specifically establishes private causes of action to enforce its provisions. Numerous other business regulation statutes also provide private rights of action to citizens aggrieved by a business practice in violation of law. See, e.g., RCW 18.74.095 (physical therapists); RCW 18.83.190 (psychologists); RCW 18.165.240(2) (private investigators); RCW 18.170.250 (security guards); RCW 18.185.170(2) (bail bond agents).
In a similar vein, the Legislature has created rights of action under the Consumer Protection Act for violation of numerous business regulations. The Legislature has declared violations of numerous business regulations actionable under the Consumer Protection Act, chapter 19.86 RCW. See, e.g., RCW 69.90.030 (kosher food products); RCW 19.105.500 (camping resorts); RCW 19.110.170 (Business Opportunity Fraud Act); RCW 19.130.060 (Telephone Buyers' Protection Act). The Legislature, not the judiciary, may provide for per se unfair trade practices. "A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 786, 719 P.2d 531 (1986).
Given the frequency with which the Legislature has created private rights of action for violation of various business regulations, its failure to create a private right of action under chapter 19.28 RCW can only mean the Legislature intended none. Expressio unius est exclusio alterius.
Nor are there grounds for implying a private right of action under chapter 19.28 RCW. We have adopted a three-part test for deciding the existence of implied causes of action:
Borrowing from the test used by federal courts in determining whether to imply a cause of action, we must resolve the following issues: first, whether the plaintiff is within the class for whose "especial" benefit the statute was enacted; second, whether legislative intent, explicitly or implicitly, supports creating or denying a remedy; and third, whether implying a remedy is consistent with the underlying purpose of the legislation.
Bennett v. Hardy, 113 Wash.2d 912, 920-21, 784 P.2d 1258 (1990). See Cazzanigi v. General Elec. Credit Corp., 132 Wash.2d 433, 446, 938 P.2d 819 (1997) (following Bennett three-part test). Here, it is plain chapter 19.28 RCW was not enacted for the pecuniary benefit of electrical contractors and union electricians, but rather to ensure uniform standards of safety in electrical work. Moreover, nothing in the wording of the chapter supports creating a remedy for electrical contractors and union electricians; the Legislature specifically lodged all enforcement authority with the Director of the Department of Labor and Industries, and specifically did not create any private causes of action as it did in numerous other business regulations. Finally, implying a cause of action might be consistent with the underlying purpose of the legislation because allowing private *496 parties to bring enforcement lawsuits might make up for the Director's failure to do so. But this would always be a justification for a private right of action. In sum, weighing the Bennett factors, one must conclude the statutory scheme does not support implying a private cause of action under chapter 19.28 RCW.[4]
C. This Case Is Not Justiciable
Even if there were private rights of action here, these claims are not justiciable because deciding them requires the imposition of our policy determination in a conflict more properly left to the legislative and executive branches to resolve. At issue here are three statutes with policy implications that are in opposition.
While electrical contractor licensure pursuant to chapter 19.28 RCW plays a significant role in ensuring safe installation and construction of electrical wires and equipment, and WISHA serves a similar function to protect employees from workplace hazards, the Legislature has given prison industries generally, and inmate labor doing construction work on correctional facilities specifically, broad authority to deviate from chapter 19.28 RCW and WISHA. The majority's opinion, however, would effectively eliminate any use of inmate labor to perform electrical work on prison facilities. This is contrary to the position the Legislature articulated in RCW 72.09.100 that inmate labor can be assigned to the construction and renovation of prison facilities through class II and class III employment. See WAC 137-80-030.
The Legislature established a strong public policy in favor of prison industries in RCW 72.09.010 designed to maximize inmate job training, rehabilitation, and cost efficient management of prison resources. RCW 72.09.100 indicates the Department has the power to provide for a "comprehensive" inmate work program and to "remove statutory and other restrictions which have limited work programs in the past." The majority relegates RCW 72.09.100 to a nullity by applying chapter 19.28 RCW and WISHA to the use of inmate labor in the construction of prison facilities. By judicial fiat, the majority here removes the substantial discretion the Legislature conferred on the Department by enacting RCW 72.09.100 to govern the use of inmate labor.
The Legislature conditioned its broad grant of authority to the Department to use inmate labor for the construction or repair of prison facilities by establishing a process under RCW 72.01.110 for determining whether use of inmate labor on a particular prison facility would be appropriate. RCW 72.01.110 provides:
The department may ... call for bids and award contracts for the erection of new buildings, or for repairs, changes, or additions to buildings already constructed: PROVIDED, That the department may proceed with the erecting of any new building, or repairs, changes, or additions to any buildings already constructed, employing thereon the labor of the inmates of the institution, when in its judgment the improvements can be made in as satisfactory *497 a manner and at a less cost to the state by so doing.
The Department must show the use of inmate labor in the erection or repair of prison facilities can be done in a satisfactory manner and in a more cost efficient fashion than by going through the traditional contracting process. The agency's authority to utilize inmate labor is not subject to any other requirements, such as obtaining technical certification for qualification of inmate labor because the Department is obliged to fulfill the legislative policy goals for prison industries articulated in RCW 72.09.010 and 72.09.100.
The Department has interpreted its prison industries statutes to allow it to use inmate labor without the necessity of compliance with various licensure statutes. The Legislature has acquiesced in such an interpretation. As the agency charged with the administration of inmate work programs, the Department's interpretation of the prison industries statutes is entitled to judicial deference. Waste Management of Seattle, Inc. v. Utilities & Transp. Comm'n, 123 Wash.2d 621, 628, 869 P.2d 1034 (1994).
Thus, we have legitimate and diametrically conflicting legislative policies before us. The majority's determination to apply chapter 19.28 RCW and WISHA to inmates working on Department facilities potentially hobbles use of prisoner inmate labor on correctional facilities projects, despite the strong legislative policy in favor of inmate labor's being used in the construction and repair of prison facilities. At the same time, to apply the provisions of RCW 72.09.100, which speaks only in broad terms of removing unspecified statutory and other restrictions on inmate labor, to negate the licensure requirements for employees, seems far too broad an invitation to the courts selectively to apply the statutory mandates otherwise designed to protect the public and workers. In the absence of a clear policy choice from the Legislature and the Governor, the parties have asked us to resolve this public policy conflict.
Resolution of the matter is within the easy purview of the Governor and the Legislature. Those are the branches of government constitutionally empowered and best able to broker the various interests at play in this case. For the Court to allow itself to be drawn into what is in essence a sociopolitical dispute is to misperceive our role in our tripartite form of government.
I would apply three principles to deciding the justiciability of cases. First, I would ask whether the litigating parties have real, nontheoretical interests in the outcome of the decision. Second, I would ask whether the judicial resolution of the issue affects a core function of a coordinate constitutional branch of government. Third, I would ask whether the judiciary can articulate coherent, manageable standards for the resolution of the controversy and provide effective relief. See Philip A. Talmadge, Understanding the Limits of Power: Judicial Restraint in General Jurisdiction Court Systems, 22 SEATTLE U.L. REV. 695, 736-38 (1999).
In this case, the electrical contractors and union electricians have asserted their pecuniary interests in the outcome, so there is a real controversy. Judicial resolution of the controversy, however, implicates significant responsibilities of both the executive and legislative branches. The executive branch operates the Department, and makes policy concerning the welfare and rehabilitation of inmates. The Legislature likewise has enacted statutes mandating inmate labor, while at the same time providing for safe and uniform installation of electrical wiring and structures. But the most decisive of the factors is the final one. While we may certainly declare our policy preferences by our decision in this case, we can hardly articulate what judicial standards we employ to do so. When the next case involving competing policy objectives comes before us, will this case provide any reasoning or standards for deciding such future cases? It will not, because all the majority has done here is articulate its policy preference, rather than elaborate any judicial standards for deciding such matters. We should permit the legislative and judicial *498 branches to establish policy, as our constitution dictates.[5]
DURHAM, J., and DOLLIVER, J.P.T., concur.
NOTES
[1] Here, we note the peculiarity of DOC's argument, which urges this court to define inmates as de facto "employees" for the sake of RCW 19.28 but proposes a contrary approach to the analysis of WISHA below. Br. of Resp't (DOC) at 35, 45; Br. of Resp't (DLI) at 14.
[2] For example, RCW 19.28.120 prohibits "any person, firm, partnership, corporation, or other entity to engage in, conduct, or carry on the business of installing or maintaining wires or [electrical] equipment...." RCW 49.17 applies to every "employer"; RCW 39.04.010 defines "public works" as including all work done at cost to the state; RCW 39.04.220 requires that subcontract work on public works shall be competitively bid; and RCW 39.12.020 requires that the hourly wage paid to laborers on all public works be at least the prevailing wage.
[3] See RCW 72.09.100(1)-(4) and WAC 137-80-030. For example, DOC assigns inmate labor to the construction and renovation of prison facilities through "Class II" and "Class III." Class II industries are tax reduction industries run by the Division of Correctional Industries. In addition to construction and electrical work, inmates also make furniture, do printing, run a dairy, and make signs. Class III industries is run by the Division of Prisons, and uses inmate labor to do a variety of tasks within the confines of prison facilities. While Class II inmates are paid on a gratuity scale that cannot exceed the prevailing wage, Class III inmates in this class are paid only a gratuity rate for their work.
[4] The statute provides in relevant part: "any employee who may be injured by reason of such failure, or the representative of such employees, may bring an action against the director in the superior court for the county in which the danger is alleged to exist...." RCW 49.17.170(4).
[5] See, e.g., Southeastern Wash. Building & Constr. Trades Council v. Department of Labor & Indus., 91 Wash.2d 41, 44-45, 586 P.2d 486 (1978) (council of labor unions have challenged L & I's enforcement of prevailing wage law); Ronken v. Board of County Comm'rs, 89 Wash.2d 304, 309, 572 P.2d 1 (1977) (union local and contractors association have standing to challenge county's failure to comply with competitive bidding requirements); Seattle Bldg. & Constr. Trades Council v. Apprenticeship & Training Council, 129 Wash.2d 787, 793-94, 920 P.2d 581 (1996) (trade unions have standing to seek judicial review of administrative approval and registration of apprenticeship program); Associated Gen. Contractors v. King County, 124 Wash.2d 855, 881 P.2d 996 (1994) (contractor's association sued for injunctive and declaratory relief against County which failed to competitively bid public works project).
[6] Although DOC concedes that WISHA applies to at least some inmates who perform electrical work, it is unclear from the record exactly how or what kind of worker health and safety standards DOC provides the other "non-employee" inmates who do the same electrical work as Class II inmates.
[7] In support of DOC's position, DLI suggests we construe state health and safety laws similar to federal case law interpreting inmate claims under the Fair Labor Standards Act. See Hale v. Arizona, 993 F.2d 1387 (9th Cir. 1993) (rejecting inmates' claim that they were entitled to minimum wages under the Fair Labor Standards Act). While there are no federal or state cases specifically addressing this issue, some federal cases do indicate that at least some OSHA regulations have been recognized or incorporated into prison administration over inmates and inmate work programs. See e.g., Bagola v. Kindt, 131 F.3d 632 (7th Cir. 1997) (though federal prison industries not required by law to comply with OSHA, OSHA officials inspect federal prison industries and advise prison officials regarding perceived safety problems); French v. Owens, 777 F.2d 1250 (7th Cir. 1985) (Eighth Amendment does not require complete compliance with OSHA regulations); Watson v. Ray, 90 F.R.D. 143 (S.D.Iowa 1981) (industrial facilities at Iowa State Penitentiary undergoing inspections by OSHA officials). Cf. RCW 49.17.010 indicating legislative purpose of WISHA is to create, maintain, continue, and enhance the industrial safety or exceed the standards prescribed by the Occupational Safety and Health Act of 1970.
[8] RCW 72.60.100 provides: "No inmate compensated for work in correctional industries shall be considered as an employee or to be employed by the state or the department...." (Emphasis added). However, RCW 72.60.102 qualifies that classification providing that inmates employed in classes I, II, and IV are eligible for industrial insurance coverage. RCW 49.17.020(4) in turn states that persons covered by industrial insurance shall be considered "employees."
[9] See generally RCW 39.04.
[10] RCW 39.12.020 provides in relevant part: "The hourly wages to be paid to laborers, workers, or mechanics, upon all public works and under all public building service maintenance contracts of the state or any county, municipality or political subdivision created by its laws, shall be not less than the prevailing rate of wage for an hour's work in the same trade or occupation in the locality within the state where such labor is performed."
[11] Class I inmates are to be paid a wage comparable to the prevailing wage; Class IV inmates are to be paid no more than the prevailing wage. RCW 72.09.100(1) and (4).
[1] Unfortunately, the majority quotes only a selected portion of this key statute. Majority op. at 489 n. 6.
[2] The cases the majority cites at 489 n. 7 are irrelevant. Those cases stand for the proposition that an umbrella organization, such as a labor council, has standing to assert the rights of its individual members. Implicit in these decisions is the understanding that the individual members have rights to assert in the first place. Here, because employees have no private right of action against employers under WISHA, the individual contractor members of the National Electrical Contractors Association (NECA) and the individual union members also have no private rights of action under WISHA to assert third-party claims.
[3] The majority suggests, without offering any authority or reasoning, that because one of the causes of action is a declaratory judgment, the ordinary rules of standing do not apply. Majority op. at 489. I have never heard of such a rule.
[4] As a final matter, it seems highly questionable chapter 19.28 RCW even applies in this case. The section the majority finds the Department in violation of, by its very terms, applies only to those engaged in the electrical business:

It is unlawful for any person, firm, partnership, corporation, or other entity to engage in [the business], conduct [the business], or carry on the business of installing or maintaining wires or equipment to convey electric current, or installing or maintaining equipment to be operated by electric current as it pertains to the electrical industry, without having an unrevoked, unsuspended, and unexpired electrical contractor license, issued by the department in accordance with this chapter.
RCW 19.28.120(1). This is a licensing statute the clear intent of which is to require the licensing of businesses involved in electrical work. The Department is not in the business of electrical work; the inmate work it does is on its own property for its own purposes, and not for the purpose of engaging in commerce in the electrical installation industry. The statute does not apply to the Department.
Nor does the requirement of RCW 19.28.510(1) that those engaged in the electrical construction trade possess a current journeyman electrician certificate apply. RCW 19.28.610 exempts those doing work on their own property from the requirement to possess a certified electrician certificate.
[5] To the extent this case is not justiciable, the appropriate action by this Court would be to dismiss the claims without prejudice, pending action by the executive and legislative branches.