**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**SEPTEMBER 28, 2023**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| R.T.L.,† | ) | No. 39276-7-III |
| | ) | (consolidated with |
| Appellant, | ) | No. 39277-5-III) |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| K.M., | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, J. — R.T.L. appeals the dependency court's order denying intervention for her to pursue a petition for de facto parentage of her granddaughter, D.M.

The Department of Children, Youth, and Families (DCYF) commenced this dependency action soon after D.M. was born. Months later, the dependency court placed D.M. with her maternal grandmother. One year later, when it became apparent D.M.'s mother would not remedy her parental deficiencies but her father might, the grandmother moved to intervene in the dependency to pursue a petition for de facto parentage. The dependency court concluded she lacked standing to seek such relief and denied her motion to intervene.

---

† To protect the privacy interests of the minor child, we use the parties' initials throughout this opinion. Gen. Order for Court of Appeals, *In re Changes to Case Title* (Wash. Ct. App. Aug. 22, 2018) (effective September 1, 2018), http://www.courts.wa.gov/appellate_trial_courts.

No. 39276-7-III; No. 39277-5-III
*R.T.L. v. K.M.*

We conclude the trial court properly denied the grandmother's motion to intervene. In a dependency, a relative who obtains placement of a child does not satisfy RCW 26.26A.440(4)(c)'s requirement of undertaking full and permanent responsibilities of a parent.

## FACTS

D.M. was born July 7, 2020, to K.M., her mother, and D.B., her father. She was placed in foster care on July 10, after a shelter care hearing at which neither parent appeared. The father was incarcerated at the time. Both parents later entered agreed orders of dependency placing D.M. in foster care.

R.T.L. is D.M.'s maternal grandmother. She began visitation with D.M. when D.M. was one month old. When D.M. was approximately eight months old, DCYF moved to change D.M.'s placement from foster care to relative placement with the grandmother. At one point in the dependency, D.M.'s primary permanency plan goal was a guardianship with her grandmother, not adoption, because her grandmother wanted to give K.M. additional time to remedy her parental deficiencies.

The father was released from prison in February 2021, shortly before D.M. was placed with her maternal grandmother. He reengaged with DCYF in November 2021 and began visitation with D.M. in December of that year. After the father began engaging in

2

No. 39276-7-III; No. 39277-5-III
*R.T.L. v. K.M.*

services, D.M.'s secondary permanency plan goal became reunification with him. The mother never participated in the dependency nor did she ever engage in services.

While the dependency was active, the grandmother filed a petition in family court for de facto parentage of D.M. D.M.'s mother joined in that petition. The grandmother then filed a motion in dependency court for leave to proceed in family court with the de facto parentage petition. She later moved to intervene in the dependency so as to properly move for the relief she sought.

A dependency court commissioner denied the grandmother's motion to intervene. The grandmother then moved to revise the commissioner's decision, and a dependency court judge denied her motion. The court found that the grandmother had not set forth a prima facie case of de facto parentage under RCW 26.26A.440, and thus she did not have standing to intervene. The grandmother appealed to this court.

While the appeal was pending, D.M. and her father were reunified and the dependency court dismissed this action. DCYF, joined by D.M.'s father, moved to dismiss this appeal as moot. Our commissioner referred the decision on the motion to this panel.

3

No. 39276-7-III; No. 39277-5-III
*R.T.L. v. K.M.*

ANALYSIS

Because we need not address any substantive issues if a case is moot, we address

mootness first.

MOOTNESS

An appeal is moot when the reviewing court "'can no longer provide effective

relief.'" *In re Marriage of Horner*, 151 Wn.2d 884, 891, 93 P.3d 124 (2004) (quoting

*Orwick v. City of Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984)).  We generally will

not review a moot appeal.  *Id.*

DCYF and the father argue this appeal is moot because the dependency has been

dismissed and accordingly there is no case into which the grandmother may intervene.

The grandmother counters that her petition filed in family court for de facto parentage is a

separate matter not mooted by the dismissal of the dependency.

We agree that the issues relating to the grandmother's intervention in the

dependency court are moot.  But now that the dependency is dismissed, that action no

longer bars the grandmother from pursuing her de facto parentage petition in family court.

Because the dependency court's order likely has preclusive effect in family court, a

decision from this court in the grandmother's favor could provide her effective relief.  For

this reason, her appeal is not moot.

4

No. 39276-7-III; No. 39277-5-III
*R.T.L. v. K.M.*

PRIMA FACIE CASE OF DE FACTO PARENTAGE

The grandmother contends the dependency court erred by concluding she did not set forth a prima facie case of de facto parentage and by denying intervention on that basis.  We disagree.

A petitioner seeking de facto parentage must first establish standing. RCW 26.26A.440(3); *Walker v. Riley*, 19 Wn. App. 2d 592, 598, 498 P.3d 33 (2021). The following procedures and rules govern a petitioner's standing: the petitioner "must file an initial verified pleading alleging specific facts that support the claim to parentage of the child."  RCW 26.26A.440(3)(a).  Then, an adverse party may file a responsive verified pleading.  RCW 26.26A.440(3)(b).  Then, unless the court determines a hearing is necessary to resolve factual issues material to standing, the court, based on the pleadings, determines "whether the individual has alleged facts sufficient to satisfy by a preponderance of the evidence the requirements of subsection (4)(a) through (g)." RCW 26.26A.440(3)(c).

The requirements are:

> (a)  The individual resided with the child as a regular member of the child's household for a significant period;
> (b)  The individual engaged in consistent caretaking of the child;
> (c)  The individual undertook full and permanent responsibilities of a parent of the child without expectation of financial compensation;
> (d)  The individual held out the child as the individual's child;

5

No. 39276-7-III; No. 39277-5-III
*R.T.L. v. K.M.*

> (e) The individual established a bonded and dependent relationship with the child which is parental in nature;
> (f) Another parent of the child fostered or supported the bonded and dependent relationship required under (e) of this subsection; and
> (g) Continuing the relationship between the individual and the child is in the best interest of the child.

RCW 26.26A.440(4). Because each requirement must be satisfied to maintain a de facto parentage action, a petitioner's failure to satisfy even one is a sufficient basis to dismiss a petition for lack of standing.

The parties address several of the standing requirements. Because one is dispositive, we limit our analysis to that requirement.

RCW 26.26A.440(4)(c) requires the petitioner to establish she "undertook full and permanent responsibilities of a parent of the child without expectation of financial compensation." The trial court found that the grandmother could not meet the "full and permanent responsibilities of a parent" requirement because she lacked authority to make various important decisions for D.M.

The grandmother does not dispute that she could not make certain parental decisions but contends the trial court's reading of the "full" parental responsibility requirement is hypertechnical. We disagree.

6

No. 39276-7-III; No. 39277-5-III
*R.T.L. v. K.M.*

To determine whether the trial court correctly construed the term "full," we must interpret the meaning of the subsection. Our primary objective when interpreting a statute is to discern legislative intent. *Cornu-Labat v. Hosp. Dist. No. 2*, 177 Wn.2d 221, 231, 298 P.3d 741 (2013). "In order to determine legislative intent, we begin with the statute's plain language and ordinary meaning." *Nat'l Elec. Contractors Ass'n v. Riveland*, 138 Wn.2d 9, 19, 978 P.2d 481 (1999).

Here, the legislature did not define the term "full" nor did it define the phrase "full and permanent responsibilities of a parent." "Where the legislature has not defined a term, 'this court will give the term its plain and ordinary meaning ascertained from a standard dictionary.'" *Cornu-Labat*, 177 Wn.2d at 231 (quoting *State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002)).

The dictionary defines "full" as "enjoying or possessed of all recognized or authorized prerogatives, rights, and privileges." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 919 (1993). "Permanent" is defined as "continuing or enduring . . . without fundamental or marked change[,] not subject to fluctuation or alteration." *Id.* at 1683. Accordingly, to undertake full and permanent parental responsibilities, a de facto parent must have all the rights a typical parent would have and those rights must not be subject to alteration.

7

No. 39276-7-III; No. 39277-5-III
*R.T.L. v. K.M.*

A relative caregiver does not have all the rights a typical parent would have. A caregiver's rights are court-given, court-restricted, and court-withdrawn. A relative caregiver receives placement in exchange for agreeing to comply with court orders, and the child is subject to removal if the relative fails to comply with the orders. RCW 13.34.130(10). Moreover, once a child is placed in DCYF custody, the court enters an order granting DCFY certain authority over the child. *See* RCW 13.34.069. For example, DCYF, not the relative with placement, authorizes school enrollment, medications, and grants permission for extracurricular activities. RCW 13.34.069(4). Also, DCYF may authorize emergency and routine medical services for a child in its custody. WAC 110-148-1560.

Additionally, a relative caregiver's rights are subject to alteration in a way a typical parent's rights are not. In a successful dependency, the relative caregiver loses placement when the trial court orders reunification of the child with one or both parents.

For both of these reasons, a relative receiving placement of a child in the course of a dependency cannot establish a prima facie case for de facto parentage.

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 39276-7-III; No. 39277-5-III
*R.T.L. v. K.M.*

Affirmed.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____        _____
Fearing, C.J.                                          Birk, J.*

_____

\* The Honorable Ian S. Birk is a Court of Appeals, Division One, judge sitting in Division Three pursuant to CAR 21(a).

9